THE STATE OF OHIO, APPELLEE, *v.* CAMPBELL, APPELLANT.

(No. 1272—Decided December 21, 1983.)

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. E. Dennis Muchnicki* and *Mr. Gregory Happ,* prosecuting attorney, for appellee.

*Mr. Eric D. Ritz,* for appellant.

MAHONEY, P.J. Defendant-appellant, John Campbell, appeals his convictions for transporting and storing hazardous waste in violation of R.C. 3734.02(F) and 3734.99. We affirm.

In April 1982, defendant John Campbell and Dwayne "Del" Campbell began negotiating with the E. G. Smith Division of the Cyclops Corporation ("Cyclops Corporation") for a contract to remove and dispose of the hazardous waste which results from the operation of the corporation's plant in Cambridge, Ohio. Del Campbell conducted the negotiations with the Cyclops Corporation while John Campbell made arrangements for the physical transportation and storage of the hazardous waste. In February 1983, the Cyclops Corporation through its agent Al Fetters and Del Campbell entered into a contract whereby the corporation would pay $92,000 for the removal and disposal of approximately two thousand two hundred drums of hazardous waste which had accumulated at the corporation's Cambridge plant.

In March 1983, Fetters and two of his foremen met with Del and John Campbell and Kenneth Albrecht to discuss the methods by which the drums would be loaded, transported and stored. According to Fetters, John Campbell's responses to certain inquiries indicated that the defendant planned to use loading and hauling procedures that Fetters considered to be unsafe. Thus, after the meeting, Fetters contacted the Ohio Environmental Protection Agency ("Ohio EPA") to verify defendant's record with the Ohio EPA and the status of his permits. In response to this inquiry, Fetters was informed that John Campbell did not possess the required hazardous waste permit.

Shortly after his initial inquiry, Fetters was contacted by the Ohio EPA and the Ohio Attorney General's office and asked to cooperate in a criminal investigation of defendant's activities involving hazardous waste. Fetters agreed. On March 27, 1983, he permitted representatives of the Ohio EPA and the Bureau of Criminal Investigation ("BCI") of the Attorney General's office to enter onto Cyclops Corporation's premises and to mark and sample the contents of some eighty of the two thousand two hundred drums to be transported and stored by John Campbell.

On March 28, and again on March 29, representatives of the Ohio EPA and BCI agents surreptitiously observed the drums of hazardous waste being loaded onto trucks contracted for by the defendant and transported to defendant's premises at 9400 Jamison Road in Lodi, Ohio, where the drums were unloaded and stored. The facility at 9400 Jamison Road was not licensed to receive, store or dispose of hazardous waste.

During the twelve days between March 28 and April 8, BCI agents and Medina County Sheriff's Deputies watched the Jamison Road site. During this time period, the drums taken from Cyclops Corporation in Cambridge remained on defendant's premises. Also during this time period, the hazardous

waste labels affixed to the drums in Cambridge were covered with black paint.

On April 8, 1983, defendant's premises at 9400 Jamison Road were searched pursuant to a warrant. One hundred thirty-two drums from the Cyclops Corporation were discovered, photographed and sampled. Many of the drums located on the Jamison Road property had been labeled and sampled by the Ohio EPA and BCI agents at the Cambridge plant. Laboratory analysis of the samples indicated that the materials in the drums, before, during and after shipment, were hazardous waste.

John Campbell was indicted for and convicted of two counts of transporting hazardous waste to an unlicensed facility and twelve counts of storing hazardous waste at an unlicensed facility in violation of R.C. 3734.02(F) and 3734.99.

### Assignment of Error I

"The trial court committed plain error by charging the jury on the affirmative defense of entrapment without allocating any burden of proof and further the trial court erred by overruling the appellant's motion for judgment n.o.v. in that there was no evidence of predisposition on the part of the appellant."

Crim. R. 30(A) provides in part:

"A party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

The record indicates that defendant failed to object to any portion of the jury instructions given by the trial court. Thus, he has waived his right to assert error in said instructions on appeal. *State* v. *Lane* (1976), 49 Ohio St. 2d 77 [3 O.O.3d 45]; and *State* v. *Childs* (1968), 14 Ohio St. 2d 56 [43 O.O.2d 119].

Moreover, the record clearly reveals that defendant planned to illegally transport and store hazardous waste from the Cyclops Corporation's Cambridge plant before the Ohio EPA, the BCI and the Medina County Sheriff's Department became involved and enlisted Fetters' cooperation. Thus, the defendant was clearly predisposed to commit the offenses and was not induced to commit the offenses by the state. While perhaps superfluous, the instructions pertaining to entrapment are not plain error.

### Assignment of Error II

"The trial court was without jurisdiction of the instant matter because the appellant's prosecution and indictment were not brought pursuant to a proper complaint as required by Ohio Revised Code Section 3734.10."

R.C. 3734.10 provides in part:

"The attorney general or the prosecuting attorney of the county or the city director of law where a violation occurs, upon complaint of the respective board of health of the health district, the legislative authority of a political subdivision in which a violation occurs, or the director of environmental protection, shall prosecute to termination or bring an action for injunction against any person violating any section of this chapter. The court of common pleas in which an action for injunction is filed has the jurisdiction to grant injunctive relief upon a showing that the respondent named in the petition is operating a solid waste facility or a hazardous waste facility in violation of any section of this chapter or regulations adopted thereunder. The court shall give precedence to such an action over all other cases.

"Upon written complaint by any person, the board of health or the director of environmental protection shall conduct such investigations and make such inquiries as are necessary to secure compliance with this chapter or the regulations adopted thereunder. The director or any board of health may, upon complaint or upon their own initiative, investigate or make inquiries into any alleged violation or act of improper solid waste disposal or

improper hazardous waste storage, transportation, treatment, or disposal."

Webster's Ninth New Collegiate Dictionary (1983) defines "complaint" as:

"1: expression of grief, pain, or dissatisfaction 2 a: something that is the cause or subject of protest or outcry b: a bodily ailment or disease 3: a formal allegation against a party."

Defendant contends that the word "complaint," as used in R.C. 3734.10, requires the director to file a criminal complaint, namely, a sworn document that meets the requirements of Crim. R. 3. According to defendant, without such a document, the trial court had no jurisdiction to entertain the instant case. Conversely, the state argues that the term "complaint" refers to a protest or outcry against the defendant's actions and a request that the Attorney General bring the appropriate legal action.

The first paragraph of R.C. 3734.10 authorizes the Attorney General, a county prosecutor or a city law director to prosecute or bring an action for injunction against a violator upon complaint of the appropriate board of health, of the legislative authority of a political subdivision or of the director. Clearly, a criminal complaint is an inappropriate vehicle for bringing an action for an injunction. Thus, a protest and a request that the appropriate law officer bring an action appears to be the legislature's method for initiating procedures for injunctive relief. Since the statute does not specify a different method for initiating criminal prosecution, we believe criminal actions are also to be initiated by a protest and a request from the appropriate board of health, the legislative authority of a political subdivision or the director.

Moreover, the second paragraph of R.C. 3734.10 permits any person to complain in writing to the appropriate health board or to the director thereby causing investigations of the alleged violation. It is reasonable to presume that the legislature intended the term "complaint" used in the first paragraph to have the same meaning when used in the second paragraph. See 50 Ohio Jurisprudence 2d (1961) 176, Statutes, Section 198. Did the legislature intend that a private citizen file a sworn criminal complaint before a health board or the director can investigate the violation? We think not. Such a construction would render enforcement of R.C. Chapter 3734 unduly burdensome and would clearly yield an impractical result. See 50 Ohio Jurisprudence 2d (1961) 213, Statutes, Section 232.

Further, we note that the Director of Environmental Protection and the Attorney General enjoy an attorney-client relationship. Section 1, Article III of the Ohio Constitution and R.C. Chapter 109. A criminal complaint pursuant to Crim. R. 3 is filed with a court. Crim. R. 1(A). Certainly it would be impractical to require a client to draft and file a legal document before his attorney could become involved in the case. Thus, the term "complaint" must refer to a protest against the alleged violator's actions either by a private citizen to the director or to the appropriate health board thereby triggering an investigation; or by the director, a health board or the legislative authority of a political subdivision to the appropriate law officer thereby causing the law officer to initiate criminal prosecution or an action for injunctive relief.

In the instant case, the April 7, 1983 letter from the Director of Environmental Protection to the Attorney General alleging violations and requesting that the Attorney General initiate legal action is the "complaint" required by R.C. 3734.10 as a condition precedent to prosecution.

### Assignment of Error III

"The trial court erred by overruling the appellant's motion to suppress the evidence obtained as a result of a search of his property pursuant to a constitutionally defective search warrant."

The warrant to search defendant's Jamison Road property was based on af-

fidavits of two hazardous waste inspectors employed by the Ohio EPA and the oral testimony of two BCI agents responsible for enforcement of the environmental laws. Both of the BCI agents testified as to their personal observations of defendant's conduct as well as to their opinions concerning the waste inspectors' credibility. While portions of the affidavits rely on hearsay information, the identities of the hearsay declarants are disclosed. Further, the declarants are also employed by the Ohio EPA, and the affiants personally vouch for the declarants' veracity. Thus, the record in the instant case overwhelmingly supports the issuance of the warrant under any standard. See *Illinois* v. *Gates* (1983), 76 L. Ed. 2d 527; *Spinelli* v. *United States* (1969), 393 U.S. 410; and *Aguilar* v. *Texas* (1964), 378 U.S. 108.

## Assignment of Error IV

"The trial court erred to the appellant's prejudice by entering judgments of conviction and sentences for Counts III-XIV of the indictment as they are allied offenses of similar import."

Defendant was convicted of two counts of illegal transportation of hazardous waste in violation of R.C. 3734.02(F) on March 28 and 29, 1983. He was also convicted of twelve counts of storing hazardous waste (also in violation of R.C. 3734.02[F]) for twelve consecutive days from March 29 through April 8, 1983.

R.C. 2941.25(B) provides:

"Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In order to constitute allied offenses of similar import the state must rely upon the same conduct to support all offenses; the offenses and their elements must correspond to such a degree that commission of one offense will necessarily result in

the commission of another; and all offenses must be motivated by a singular animus. *State* v. *Mitchell* (1983), 6 Ohio St. 3d 416; *State* v. *Johnson* (1983), 6 Ohio St. 3d 420; *State* v. *Logan* (1979), 60 Ohio St. 2d 126 [14 O.O.3d 373]; and *State* v. *Donald* (1979), 57 Ohio St. 2d 73 [11 O.O.3d 242].

R.C. 3734.02(F) states:

"No person shall store, treat, or dispose of hazardous waste anywhere, regardless whether generated on or off the premises where the waste is stored, treated, or disposed of, or transport or cause to be transported any hazardous waste to any other premises, except at or to:

"(1) A hazardous waste facility operating under a permit issued under this chapter;

"(2) A facility in another state operating under a license or permit issued in accordance with the 'Resource Conservation and Recovery Act,' 90 Stat. 2806, 42 U.S.C. 6921;

"(3) A federally approved facility for the disposal of polychlorinated biphenyls in compliance with the 'Toxic Substances Control Act,' 90 Stat. 2003, 15 U.S.C. 2601;

"(4) A facility in another nation in accordance with the laws of that nation;

"(5) A facility holding a permit issued pursuant to Title I of the 'Marine Protection, Research, and Sanctuaries Act,' 86 Stat. 1052, 33 U.S.C. 1401; or

"(6) The particular manufacturing plant where the waste is to be used as a raw material or other component in a production process."

Thus, R.C. 3734.02(F) prohibits two distinct and different actions, namely, the storage, treatment or disposal of hazardous waste at an unlicensed facility and the transportation of hazardous waste to an unlicensed facility. On March 28 and 29, 1983, defendant transported or caused to be transported hazardous waste to an unlicensed facility. Also on March 28 and 29 and again on March 30 through

April 8, 1983, defendant stored the hazardous materials at an unlicensed facility. Clearly he could have transported the toxic chemicals to an unlicensed facility without necessarily permitting said waste to be stored, treated or disposed of on the premises. Conversely, he could have stored hazardous waste transported by another without participating in the transportation. Thus, transportation to an unlicensed facility is separate and distinct from storage.

Moreover, the storage of hazardous waste at an unlicensed facility for twelve consecutive days is not a single offense. R.C. 3734.99(A) provides:

"Except as otherwise provided in division (B) of this section, whoever knowingly violates any section of this chapter, except section 3734.18 of the Revised Code, governing the storage, treatment, transportation, or disposal of hazardous waste is guilty of a felony and shall be fined not more than twenty-five thousand dollars or imprisoned for not more than two years, or both. Whoever violates any section of this chapter governing the disposal of solid wastes, or violates section 3734.18 of the Revised Code, shall be fined not more than two hundred fifty dollars. Each day of violation constitutes a separate offense."

Thus, the legislature has clearly determined that each day of illegal storage is a separate offense.

### Assignment of Error V

"The investigation, prosecution, and trial of the appellant were violative of his fundamental rights to due process of law and fair trial guaranteed by the Fourth, Sixth and Fourteenth Amendments to the United States Constitution."

In essence, defendant contends that the state should have prevented him from carrying out his illegal plans. Many crimes are detected and prosecuted on evidence gained from surveillance of the defendant's conduct. We find no constitutional provision requiring law enforcement personnel to notify a potential perpetrator that they are aware of his plan to commit a crime.

We overrule all of appellant's assignments of error. The judgment is affirmed.

*Judgment affirmed.*

BAIRD and GEORGE, JJ., concur.