THE STATE OF OHIO, APPELLEE, *v.* LANE, APPELLANT.

[Cite as State v. Lane (1976), 49 Ohio St. 2d 77.]

(No. 76-838—Decided December 30, 1976.)

*Mr. Stephan M. Gabalac,* prosecuting attorney, and *Mr. Frederic L. Zuch,* for appellee.

*Mr. L. A. Dirker* and *Mr. Paul G. Perantinides,* for appellant.

## I.

CELEBREZZE, J. Appellant presents 17 propositions of law to support various claims of error in the trial court. Appellant argues first that it was prejudicial error for the trial court to refuse to allow defense counsel to examine veniremen regarding their views on capital punishment. The court prohibited such questioning on *voir dire* because it felt that "the charge will be that the jury shall not take into consideration any question of punishment," in apparent reference to R. C. 2929.03(B). Appellant's argument is, essentially, that by restricting *voir dire* examination on the question of capital punishment, the court prevented a venireman's possible partiality to emerge and be met by challenges for cause or peremptory challenges.

Recently, in *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, this court stated that "[d]espite the fact that capital case jurors are to consider only guilt, and that sentencing is left to the trial judge * * * a prospective juror's opinion on capital punishment often does prevent him from impartially applying the law * * *." *Bayless* at page 89. Appellant contends further that because there may have been members of the jury who were not opposed to the death penalty, those individuals may have been unable to fairly and impartially determine guilt. Clearly, this is a most tenuous contention.

In *Witherspoon* v. *Illinois* (1968), 391 U. S. 510, cited by appellant, jurors who indicated general conscientious scruples against capital punishment were systematically excluded from a jury which returned a guilty verdict *and* sentenced the defendant to death. The United States Supreme Court concluded that a sentence imposed by such a "hanging jury" could not be carried out. However, the court stated further, at page 518, that it could not con-

clude, on the basis of the record or data before it "that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction."

In the case at bar, the trial court delivered a preliminary instruction to the veniremen, to the effect that they would consider only the issue of guilt, and further informed them that they would not prescribe the sentence should a guilty verdict be returned.

No evidence is presented to this court which would support appellant's contention that the possible presence on the jury of one not opposed to capital punishment prevented a fair and impartial determination of guilt. Here the jurors were neither included nor excluded because of their beliefs on the subject of capital punishment. On the contrary, the jurors' opinions on that topic remain unknown. Although we recognize that many individuals have firmly held beliefs relative to the imposition of the death penalty, we hold that in a prosecution for aggravated murder with specifications, a trial court's general instruction during *voir dire* may be an adequate substitute for individualized inquiry into whether a prospective juror could render an impartial decision in spite of his views on capital punishment. Due to the thoroughness of the trial court's instruction, we find appellant's first proposition of law to be without merit.

## II.

In his propositions of law Nos. 2, 3 and 4, appellant complains that unorthodox procedures in the trial court did not strictly comport with the directives of Crim. R. 24. Under proposition of law No. 2, appellant asserts the trial court erred by dismissing prospective jurors who were not under oath when they expressed requests to be excused from jury duty. Because all these unsworn veniremen were excused, there is nothing in the record to show that the failure of the trial judge to have oaths administered to these prospective jurors could in any way have prejudiced the appellant.

Under proposition of law No. 3, appellant claims it

was error for the trial court to permit a so-called "joint peremptory challenge" of five veniremen. Once again, appellant cannot show any resultant prejudice. In addition, the procedures discussed in propositions of law numbered 2 and 3 occurred in the presence of the judge, the prosecutors, the defense counsel and the appellant. The court repeatedly checked with defense counsel to assure their agreement, and also ascertained that appellant understood the juror selection process. This court will not ordinarily consider claims of error predicated upon alleged irregularities in the proceedings at trial where a defendant, at his trial, has acted in a manner inconsistent with the position taken upon appeal with regard to such alleged irregularities. *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, certiorari denied, 385 U. S. 930. Accordingly, we reject apellant's second and third propositions of law.

As to proposition of law No. 4, appellant argues that the trial court improperly allowed prospective jurors to be excused for cause and gives two examples. The record discloses that the two veniremen referred to by appellant, Mr. Pesek and Mr. Yannuzzo, unequivocally stated that they could not follow the law. Pesek indicated he did not believe in circumstantial evidence, and Yannuzzo stated that he would not sign his name to a guilty verdict because the appellant was too young. With reference to Yannuzzo, defense counsel expressly remarked that he did not object to dismissal. We find no merit to this proposition of law.

### III.

As his proposition of law No. 5, appellant suggests that certain remarks made by the prosecutor in the opening statement were improper, prejudicial, and never proven by the state.

In describing the encounter between appellant and the victim, the prosecutor stated: "Georgene Burse turned. Stacey Lane took out the gun. She saw a man there that she knew with a gun. She said, 'You have got to be kidding.'" The prosecutor also made reference to a "grudge" appellant supposedly had with the victim. Ap-

pellant asserts that prejudice resulted from the first statement because it implied that there was an eyewitness to the murder.

This remark cannot be considered prejudicial in light of appellant's admissions to Rudy Trivonovich, which Trivonovich related during his testimony at trial. In reference to the alleged "grudge," it is apparent that no prejudice could result because appellant had one obvious motive, that being robbery. Therefore, a second motive, the "grudge," was unnecessary.

Appellant also complains about a purported "attack" upon the alibi defense anticipated by the prosecution. The record discloses that, despite the failure by defense counsel to file a timely notice of alibi, the court ruled that it would allow said defense in the interest of justice. Because defense counsel indicated their intention to employ this defense, there was no impropriety in the opening remarks by the prosecutor.

### IV.

As his proposition of law No. 6, appellant asserts it was prejudicial error for a state's witness to make reference to his criminal record. During the trial, appellant's half-brother, Richard Sturm, was asked what he had said to dissuade appellant from his declared intent to hold up the flower shop:

"Q. What did you tell him in particular?

"A. I said, 'You don't want to go back to the penitentiary do you?' "

The prosecutor subsequently restated this testimony in his closing argument. Appellant argues that the reference to his criminal past may have impaired his presumption of innocence.

The question put to Sturm might naturally be taken to be an inquiry concerning the events which transpired prior to the murder. From the record it is clear that the prosecutor was attempting, by his questions, to establish the requisite element of purpose. Moreover, defense counsel did not specifically object to either the question or the

answer. Therefore, since this issue was not brought to the trial court's attention, it is waived. *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83. Likewise, defense counsel did not object to the restatement of this testimony in the closing argument. It is inappropriate to raise this issue for the first time on appeal. *State* v. *Watson* (1971), 28 Ohio St. 2d 15.

## V.

In his proposition of law No. 7, appellant argues that it was prejudicial error for the trial court to admit in evidence "inflammatory and irrelevant" photographs (actually, color photographic slides) of the victim's nude body. The photographs were introduced in conjunction with the testimony of the coroner, Dr. Robert H. Lemmon.

The admission or rejection of photographs is within the sound discretion of the trial court. *State* v. *Hill* (1967), 12 Ohio St. 2d 88; *State* v. *Woodards, supra* (6 Ohio St. 2d 14). We find no abuse of discretion here, since the photographs were properly identified, and were relevant as accurate representations of the scene which they purported to portray.

## VI.

As his prospition of law No. 8, appellant asserts that the trial court erred by allowing in evidence the testimony of a witness who related his telephone conversations with the victim. Wayne A. Burse testified that he received two telephone calls from his aunt, the decedent, on February 28, 1975. He stated that the first call occurred at 4:45 p. m., followed by another call at 5:15 p. m. Although she did not give her name, Wayne Burse said he knew the voice was his aunt's, as he had spoken to her over the telephone in the past. Appellant urges that this testimony was inadmissible as hearsay.

This contention indicates a misunderstanding of the hearsay rule. See McCormick on Evidence 584 (2d Ed.), Sections 246 *et seq.* The testimony was presented to raise an inference that the victim was alive at the time of the calls. It was not produced to prove the veracity of the

statements asserted therein. Because the hearsay rule is inapplicable, we find this proposition to be without merit.

## VII.

In proposition of law No. 9, appellant complains that the trial court did not adequately instruct the jury regarding circumstantial evidence. Appellant did not merely fail to offer objection thereto at the time of instruction. The record reveals that defense counsel specifically stated that he was satisfied with the charge of the trial court. A party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict and states specifically the matter to which he objects and the grounds of his objection. By his failure to comply with the directives of Crim R. 30, appellant has waived any possible error.

## VIII.

As proposition of law No. 10, appellant argues that the trial court did not properly consider the issue of mental deficiency, as set forth in R. C. 2929.04(B)(3). A perusal of the record discloses that each of the examining doctors was asked whether the appellant suffered from psychosis or mental deficiency. All responded in the negative. The finding of the trial court was therefore consistent with, and entirely supported by, the evidence adduced.

## IX.

In proposition of law No. 11, appellant claims the trial court erred in overruling his motion for a judgment of acquittal. Appellant points out that two of the state's witnesses, Sturm and Trivonovich, were admitted liars. Appellant also speculates regarding the coroner's testimony that degenerative spermatozoa were found in the victim.

Originally, appellant's two half-brothers made attempts to cover up the crime. Consequently, they were charged with obstruction of justice. The jury was aware of this fact, and it was for them to determine the credibility to be afforded those witnesses. As for the testimony of the coroner, the jury could consider this evidence and de-

cide whether it indicated the presence of another person at the scene of the crime.

It has been established, as a general policy, that the Supreme Court will not weigh the evidence. The record reveals that, from the evidence presented, reasonable minds could reach different conclusions as to whether each of the elements of the crimes had been proven beyond a reasonable doubt. Therefore, the question was one for determination by the jury, and the trial court did not err in overruling appellant's motion for judgment of acquittal. See *State* v. *Cliff* (1969), 19 Ohio St. 2d 31.

## X.

In proposition of law No. 12, appellant presents the argument that he was prejudiced by the trial court's refusal to compel discovery of prior statements and of grand jury testimony by appellant's two half-brothers, who were both state's witnesses. There is no merit to the claim that these witnesses were co-defendants, since they were indicted for obstruction of justice rather than murder and/ or robbery. Where a prosecution witness is not a co-defendant, a trial court does not err in refusing to compel discovery of prior statements and grand jury testimony given by said witness. Crim. R. 16(B)(2); Crim. R. 16(B)(3).

## XI.

As his proposition of law No. 13, appellant claims the trial court erred in refusing the request of defense counsel to renew cross-examination of Sturm on the day following the original cross-examination. The decision to grant or refuse additional cross-examination of a prosecution witness, after defense counsel's cross-examination has been completed, is within the sound discretion of the trial court. McCormick on Evidence (2d Ed.), 57, Section 29.

The trial court allowed both defense counsel to cross-examine Sturm, for a total of one hour and eighteen minutes. After that lengthy cross-examination, defense counsel informed the court that they had no additional questions for that witness. Under these circumstances, the trial court's

refusal to allow renewed cross-examination did not constitute an abuse of discretion.

## XII.

In proposition of law No. 14, appellant argues it was error for the trial court to allow the reading of isolated parts of state's witnesses' testimony to the jury. The review of the testimony occurred during deliberation, in response to a request by the jury. After the reading of the record, defense counsel twice indicated that they had no objection to this procedure. Due to his former inconsistent position, appellant cannot now assign error on this issue. *State* v. *Woodards, supra.* Moreover, this court has specifically approved of the procedure under consideration. *State* v. *Berry* (1971), 25 Ohio St. 2d 255. Therefore, this proposition of law is rejected.

## XIII.

In proposition of law No. 15, appellant asserts that the state's closing argument improperly implied that the burden of proof had shifted to the defense to prove the accused innocent. The record reveals that the state merely pointed out the failure, on the part of defense counsel, to subpoena witnesses to prove its theory of the case. Because appellant had the burden of going forward with evidence to rebut the adverse inferences raised by the state, the comment by the prosecutor was not improper. See 21 Ohio Jurisprudence 2d 166, Evidence, Section 157. Appellant also claims that this line of argument violated his right to remain silent and amounted to a comment by the prosecution on his failure to testify. Appellant misconstrues the law enunciated in *Griffin* v. *California* (1965), 380 U. S. 609. We understand the *Griffin* holding to prohibit only direct comment upon the accused's failure to testify. Thus, the prosecution is not prevented from commenting upon the failure, on the part of the defense, to offer any other evidence in support of its case. Therefore, this proposition of law is without merit.

## XIV.

In his proposition of law No. 16, appellant argues that the trial court erred when it overruled his motion for a new

trial on the basis of newly discovered evidence. Appellant offered the testimony of one Richard Muenick, who was at that time serving a sentence in Mansfield Reformatory for five counts of forgery. Muenick also revealed that he had recently received treatment at the Fallsview Mental Health Center. The essence of his testimony was that he had had a homosexual relationship with Richard Burse, the husband of the victim. Muenick alleged that Burse had, at one time, offered him $1,500 to get "rid of" his wife, Georgene Burse, but that he had refused to do it. Muenick concluded that he had personal doubts that the appellant shot Georgene Burse.

"The allowance of a motion for a new trial on the grounds of newly discovered evidence is within the competence and discretion of the trial judge; and in the absence of a clear showing of abuse, such discretion will not be disturbed." Paragraph two of the syllabus in *State* v. *Williams* (1975), 43 Ohio St. 2d 88. A review of Muenick's testimony reveals that the witness was evasive and ambiguous in response to questioning, and contradictive of his earlier statements. Therefore, due to the nature of the newly discovered evidence, we hold that the trial court did not abuse its discretion in overruling the motion for a new trial.

### XV.

In his final proposition of law, No. 17, appellant asserts that Ohio's death penalty legislation unconstitutionally permits the arbitrary imposition of the death sentence, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. We have determined, in *State* v. *Bayless, supra* (48 Ohio St. 2d 73), that Ohio's capital punishment legislation passes constitutional muster. Therefore, we reject this final proposition of law.

### XVI.

Accordingly, the judgment of the Court of Appeals is hereby affirmed.

*Judgment affirmed.*

CORRIGAN, W. BROWN and P. BROWN, JJ., concur.

O'NEILL, C. J., and HERBERT, J., concur in the judgment. See *State* v. *Anderson* (1972), 30 Ohio St. 2d 66.

STERN, J., concurs in the judgment.