This accelerated appeal is the most recent in a long series of challenges by defendant-appellant Dwayne Brooks to his four convictions arising from a 1987 shooting between rival drug gangs involved in a "turf" dispute. In this appeal he complains about the denial of his second motion for new trial.
The testimony at trial revealed that defendant was among a group of four people who, armed with a pistol and shotgun, stole a van by force, drove to a park, and shot three victims in broad daylight in front of dozens of witnesses. There was evidence that defendant subsequently fled the jurisdiction.
By the time he was apprehended and extradited for trial, two of his companions had already been convicted: Kelly Wingo pled guilty to voluntary manslaughter pursuant to a plea bargain, and Samuel Philpot had been convicted on all charges by jury trial.[1]
Wingo and Philpot, among many other witnesses, testified at his trial when called by the prosecution. Defendant presented an alibi defense, arguing that he was in New York at the time of the shooting. A jury convicted Brooks of aggravated murder with a mass murder specification, two counts of attempted murder, and one count of aggravated robbery. This court affirmed his convictions on direct appeal in State v. Brooks (Jan. 10, 1991), Cuyahoga App. No. 57034, unreported. The Supreme Court of Ohio denied further review. State v. Brooks (1992), 63 Ohio St.3d 1406.
Approximately two and one-half years after his conviction, defendant filed a petition for postconviction relief and a motion for new trial. In support, defendant filed affidavits of Wingo and Philpot. which alleged they provided false testimony at defendant's trial. Denying relief, the trial court found, inter alia, that Philpot testified at trial he could not remember anything and that there was substantial evidence other than Wingo's testimony to support defendant's convictions. We affirmed the denial of defendant's motion for new trial in State v. Brooks (Mar. 10, 1994), Cuyahoga App. No. 65088. unreported. The Supreme Court of Ohio again declined further review. State v. Brooks (1994),70 Ohio St.3d 1425.
Defendant thereafter filed an application to reopen his direct appeal, alleging ineffective assistance of his appellate counsel. This court denied his motion in State v. Brooks (Jan. 10, 1991), Cuyahoga App. No. 57034, unreported, reopening disallowed (July 27, 1994), Motion No. 40930. The Supreme Court of Ohio declined further review. State v. Brooks (1995), 74 Ohio St.3d 1425.
Defendant, represented by counsel, filed a second motion for new trial in the case at bar approximately ten years after the shootings and nine years after his convictions. The motion argued the prosecution failed to provide him discovery before his trial concerning improper influence and/or deals allegedly made with prosecution witnesses and reiterated the claims made in the first motion for new trial. The second motion was again supported by affidavits of Wingo and Philpot, which generally reiterated the substance of their original affidavits but provided additional detail.[2] In addition, defendant also submitted affidavits from family and friends, Michael Creel, another witness at trial, and Richard Jackson, Tracy Parsons, and Terrence Talton, none of whom testified at his trial.
Defendant also filed his own brief in the trial court without submitting any additional evidence. The trial court granted leave to file the second motion for new trial, but denied the second motion on the merits in an order journalized October 22, 1998. Defendant timely appeals.[3]
Prior to considering the merits of this appeal, however, we will address an argument raised by the prosecution at oral argument. The prosecution contends that the order denying defendant's second motion for new trial does not constitute a final appealable order subject to review by this court, because the trial court did not enter findings of fact and conclusion of law. This court has already held, however, that trial courts have no duty to issue findings of fact and conclusions of law when denying motions for new trial in criminal cases. State v. Girts (1997), 121 Ohio App.3d 539,565. Accordingly, the trial court's order denying defendant's second motion for new trial constituted a final appealable order, and this court has jurisdiction to review the merits of this appeal.
Defendant raises the following sole assignment of error:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DISMISSED APPELLANTS [SIC] MOTION FOR NEW TRIAL BASED UPON NEWLY DISCOVERED EVIDENCE WITHOUT FIRST HOLDING A [SIC] EVDENTIARY HEARING TO DETERMINE IF PREJUDICIAL ERROR OCCURRED DURING HIS JURY TRIAL.
This assignment lacks merit.
Defendant contends that the trial court improperly denied his second motion for new trial. He argues the trial court should have granted him a new trial based on newly discovered evidence. He also contends the trial court should have conducted a hearing on his second motion even though he never requested one.
It is well established that a trial court's ruling on a motion for new trial will not be reversed on appeal absent an abuse of discretion. State v. Scheibel (1990), 55 Ohio St.3d 71, syllabus paragraph one; State v. Lane (1976), 49 Ohio St.2d 77, syllabus paragraph three. An abuse of discretion is more than an error of law or judgment; the trial court's ruling must be unreasonable, arbitrary, or unconscionable. State v. Moreland (1990), 50 Ohio St.3d 58,61. After reviewing the record in compliance with this standard, we conclude that defendant has failed to show the trial court abused its discretion by denying his second motion for new trial or by declining to hold an evidentiary hearing.
The standard applicable to motions for new trial in criminal cases was summarized by the Ohio Supreme Court in the seminal case of State v. Petro (1947), 148 Ohio St. 505, syllabus, as follows:
 To warrant the granting of a motion for new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, 4(4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.
Id. (Citations omitted.)
This court recently affirmed the denial of a second motion for new trial raising the same arguments under strikingly similar circumstances consistent with these principles in State v.Stansberry (Oct. 9, 1997), Cuyahoga App. No. 71004, unreported. In both cases defendant's second motion for new trial largely rehashed claims rejected in the first motion and involved recanted testimony.
In the case at bar, Wingo and Philpot's affidavits supporting defendant's second motion for new trial repeat their prior affidavits supporting his first motion for new trial and add nothing new of substance. This court already affirmed the denial of appellant's first motion for new trial based on these claims.[4]
Under the circumstances, the trial court did not abuse its discretion by declining to permit appellant to relitigate these claims repeatedly.
Defendant also seeks to support his alibi claim with affidavits from three friends who are also relatives: Richard Jackson, Tracy Parsons, and Talton.[5] These affidavits likewise add nothing new of substance. They do not allege any improper action whatsoever by the prosecution. Moreover, their testimony would have been cumulative to the evidence presented at defendant's trial because Geraldine Jackson and James Parsons provided similar testimony at trial to support defendant's alibi claim that he was in Long Island, New York, at the time of the shooting. As a result, the trial court did not abuse its discretion by declining defendant a new trial to present this evidence or to conduct a hearing to determine whether presentation of such cumulative evidence warranted a new trial.
The only new item of arguable significance is that provided by his high school classmate Creel. Creel's affidavit, like that of defendant's other high school friends, Philpot and Wingo, seeks to recant his trial testimony. However, as noted in defendant's appeal from the denial of his first motion for new trial, the fact that a witness recants or admits giving perjured testimony does not, by itself, warrant a new trial. State v. Brooks, supra at 11; accord State v. Stansberry, supra at 9. Nor does the assertion of such a claim mandate that the trial court conduct a hearing on the motion. E.g., State v. Hill (1992), 64 Ohio St.3d 313, 333; Statev. Lewis (1990), 70 Ohio App.3d G24, 640; Toledo v. Stewart (1983),11 Ohio App.3d 292, 293. This is particularly true when defendant did not even request an oral evidentiary hearing on his motion as in the case at bar. Loc.R. 11(A); State v. Walton (June 6, 1983), Cuyahoga App. No. 45223, unreported.
When a request for a new trial is based on recanted testimony, the trial court must determine which set of contradictory testimony of the recanting witness is credible, and, if the recantation is believable, whether it would have materially affected the outcome of trial. State v. Stansberry, supra; State v. Pirman (1994),94 Ohio App.3d 203; Toledo v. Easterling, (1985), 26 Ohio App.3d 59. Under the circumstances, the trial court could properly find that Creel's latest version was not credible and, even if it were credible, that his testimony had no material effect on the outcome of trial.
The record shows that Creel was not an eyewitness to the shootings at the park. He was arrested after the shootings. A get-away car, owned by defendant, had been parked at Creel's house during the shooting and led the police to Creel. While under arrest, Creel implicated defendant, Wingo, and Philpot, each of whom he knew from attending Shaker Heights public schools. The police used this information to obtain arrest warrants on the trio. Creel testified accordingly at defendant's trial. Creel's belated affidavit in support of defendant's second motion for new trial, dated approximately ten years after the shootings, states that he did not see Brooks on the date of the shootings and that the police had threatened to charge him with the crimes if he did not testify against Brooks.
The record shows that defense counsel pursued this identical theory during cross-examination at trial. In fact, Creel stated that the police arrested him and wanted to charge him with the crimes. The defense pursued a long line of questions to suggest to the jury that the police put words in Creel's mouth concerning the identity of the offenders and held him in custody for days until he agreed to sign a written statement implicating the trio. During redirect, however, Creel specifically stated that the police did not mistreat him and that both his written statement to the police and testimony at trial were truthful.
The trial court was not required to accept as true Creel's newly minted claims of police or prosecutorial misconduct. When the defense explicitly raised these claims at trial, the jury apparently did not believe that Creel falsely identified his high school friend. Moreover, in light of Creel's prior statement and testimony to the contrary in at least two cases, there is no indication that another jury would now find his current testimony to be more credible than either his original statement to the police or his testimony in defendant's first trial.[6]
Perhaps more importantly, however, a review of the record reveals that Creel's testimony at trial was peripheral because he was not on the scene and did not observe any of the shootings. In addition, there was a substantial body of other evidence presented at trial to prove that defendant committed the crimes.[7] Under the circumstances, the trial court could properly conclude there was no reasonable likelihood (1) that Creel's testimony had any effect on the jury's verdict or (2) that a new trial, without such testimony, would reach a different result. For these reasons, defendant has failed to show any error in the denial of his second motion for new trial.
Accordingly, defendant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., and ANNE T. KILBANE, J., CONCUR.
 ______________________________ DIANE KARPINSKI JUDGE
[1] Wingo did not appeal from his conviction. This court affirmed Philpot's conviction for aggravated murder and two counts of attempted murder with specifications by a three-judge panel inState v. Philpot (Nov. 9, 1989), Cuyahoga App. No. 56124, unreported. The other accomplice was never apprehended.
[2] Ironically, the only significant difference between the first and second sets of affidavits was that in his second affidavit Philpot no longer claimed that he was "granted immunity" by the prosecution to give false testimony. This difference undermined defendant's claim of prosecutorial misconduct. Philpot was in fact never granted immunity, was convicted by a three-judge panel, and continues to serve his sentence. See fn. 1, supra.
[3] Defendant pro se pursued the filing and briefing of this appeal, but obtained substitute licensed counsel prior to the oral argument.
[4] Philpot claims that he lied at defendant's trial because he was unilaterally seeking the best possible treatment for himself. He does not allege that the prosecution made any promises or threats to him in exchange for his allegedly false testimony.
[5] The Parsons and Talton affidavits are identical verbatim to affidavits filed in connection with a prior petition for post-conviction relief.
[6] The record shows that Creel also testified in the criminal case against Philpot.
[7] This evidence was consistent with the evidence presented in the case against Philpot. See State v. Philpot (Nov. 9, 1989), Cuyahoga App. No. 56124, unreported.