OPINION
Defendant, John C. Snyder, also known as "Chris" Snyder, appeals from his conviction and sentence for aggravated robbery, robbery, and burglary.
Marvin Wiley lives in a rural area near Versailles with his eighty-three year old mother, Louise Wiley. On April 18, 2001, around 7:00-8:00 p.m., Mr. Wiley noticed a car with several people in it pass by his house four or five times. Finally, the car stopped, and a female emerged and came to the door and asked Wiley if the Reynolds family lived there. Mr. Wiley told the woman that no such person lived there. She then got back into the car and left.
Shortly after dark, around 9:30 p.m., Mr. Wiley heard a knock at his back door. When he answered the door, Mr. Wiley was immediately pulled outside by his arm and repeatedly struck in the face. Mr. Wiley was knocked to the ground and his two wallets plus other cash he had in his pocket were stolen. Mr. Wiley observed two assailants during the attack.
Meanwhile, Mrs. Wiley was in her bedroom preparing to go to bed. She had just taken off her glasses and her hearing aid when she turned around and saw a man who wore a handkerchief over his face, standing in her bedroom. The man demanded money and struck Mrs. Wiley across the back of the neck and shoulders, knocking her to the floor. The man then grabbed Mrs. Wiley's purse and ran. According to Mrs. Wiley, the man was holding something in his hand that was covered with another handkerchief. She believes she saw the barrel of a gun sticking out from under the handkerchief.
Mrs. Wiley found her son Marvin in the back yard, injured. Mrs. Wiley tried to call for help but the telephone wouldn't work. She picked up her cane and a flashlight and walked a quarter of a mile to a neighbor's house, where she called police. Mr. Wiley was subsequently taken to Wayne Hospital for treatment of wounds to his head and face.
When they arrived at the scene police discovered that the telephone wires to Mr. Wiley's house had been cut. Mr. Wiley had been badly beaten about the face and head. Police subsequently received a number of anonymous telephone calls about this crime, some of which indicated that Chris Snyder and Stephen Garner were involved.
During their investigation police talked with Tracy Slomba's daughter, Lindsey, Defendant's brother, Tom Macias, and Tracy Slomba's next door neighbor, Sarah Erbaugh. These conversations led police to talk with Tracy Slomba. Slomba was subsequently arrested, along with the Defendant herein, Chris Snyder, Philip Macias, Stephen Garner, and Luis Macias. Several items stolen from the Wileys were recovered by police along the rural roads near the Wiley residence.
As a result of these events, Defendant was indicted on two counts of aggravated robbery in violation of R.C. 2911.01(A)(1)/(A)(3), and one count of aggravated burglary in violation of R.C. 2911.11(A)(1). A firearm specification and a repeat violent offender specification was attached to each charge. Defendant was subsequently tried before a jury along with his co-defendant, Philip Macias.
During Defendant's trial, Sarah Erbaugh, Tracy Slomba's friend and next door neighbor, testified that earlier in the day on April 18, 2001, she and Slomba drove to Philip Macias' home in Ansonia. The other people present there were Philip Macias, his two brothers, Tom Macias and Luis Macias, and Defendant, Chris Snyder. Erbaugh testified that she heard Defendant Snyder say he needed some pliers to cut wire. Additionally, she heard Philip Macias say that he needed to go see "Flash," who is Marvin Wiley, because "Flash" owed him some money. Philip Macias returned that afternoon with Erbaugh and Slomba to Slomba's apartment in Greenville, Ohio.
At about 7:30 p.m. that evening, Slomba borrowed Erbaugh's car to drive Philip Macias back to Ansonia. After Macias and Slomba had left, Erbaugh fell asleep on the couch in Slomba's apartment. Erbaugh was awakened much later that night when Slomba returned accompanied by four men: Chris Snyder, Stephen Garner, and Luis and Philip Macias. The next morning, Erbaugh observed Slomba take three bags of trash out of her apartment, even though Erbaugh had earlier seen only two bags waiting to be taken out. Around 7:30 a.m., Erbaugh drove the two Macias brothers, and Snyder and Garner back to Ansonia. At trial, Erbaugh identified State's Exhibit 15 as a black leather jacket Chris Snyder wore on the night of April 18th. Forensic testing revealed Marvin Wiley's blood on that jacket.
After entering into a negotiated plea agreement with the State, co-defendant Stephen Garner testified on behalf of the State at Defendant Chris Snyder's trial. Garner testified that on April 18, 2001, at around 7:00-8:00 p.m., he was at Chris Snyder's home with Snyder, Tracy Slomba, Philip Macias and Luis Macias. Everyone then left together, except Garner and Slomba's daughter, Lindsay. At around 8:00-9:00 p.m. they all returned and asked Garner to help them rob Marvin Wiley. Slomba said they had already been to Wiley's home. The plan was that, when Wiley answered the door, Philip Macias would knock Wiley out and rob him.
Garner testified that he, the two Macias brothers, Tracy Slomba and Chris Snyder, got into one vehicle and drove to Marvin Wiley's residence. On the way Luis Macias said he had a gun. Upon arrival, Slomba stayed in the car while the four men got out and positioned themselves around the house. Chris Snyder cut the telephone lines. Philip Macias then knocked on the back door. Marvin Wiley answered the door and stepped outside to converse with Philip Macias. Suddenly, Philip Macias punched Wiley in the face with his fist and Wiley fell to the ground. Philip Macias and Snyder then began kicking Wiley.
Garner put his hand over Wiley's mouth to stop him from screaming. Garner heard a woman inside the house scream, and then saw Luis Macias running out of the house. The men ran back to the waiting car and Slomba drove them away from the scene. Philip Macias and Snyder each had a wallet and Luis Macias had a purse. After going through those items, the men began throwing things out of the windows of the moving car.
Slomba drove to Dayton where she and Snyder bought some crack cocaine. Everyone smoked the crack on the way back to Slomba's apartment. They also stopped and purchased beer. Upon arriving at Slomba's apartment, they found Sarah Erbaugh there, asleep on the couch. Philip Macias put his bloody clothes in a trash bag at Slomba's apartment. Garner testified that during the robbery Luis Macias wore a handkerchief over his face., Defendant Snyder was found guilty of the aggravated robbery of Marvin Wiley. As to the count involving Louise Wiley, Defendant was found not guilty of aggravated robbery, but guilty of the lesser included offense of robbery. Defendant was found not guilty of aggravated burglary but guilty of the lesser included offense of burglary. Defendant was found not guilty by the jury on the firearm specifications. The trial court found Defendant guilty on the repeat violent offender specifications. The trial court subsequently sentenced Defendant to consecutive terms of imprisonment totaling twenty-one years.
From his conviction and sentence Defendant has timely appealed to this court.
 FIRST ASSIGNMENT OF ERROR "THE GUILTY FINDINGS BY THE JURY WITH RESPECT TO APPELLANT, JOHN CHRISTOPHER SNYDER, WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."
A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6,1996), Montgomery App. No. 15563, unreported. The proper test to applyto that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 This court will not substitute its judgment for that of the trier offacts on the issue of witness credibility unless it is patently apparentthat the factfinder lost its way. State v. Bradley (October 2, 1997),Champaign App. No. 97-CA-03, unreported. In State v. Lawson (August 22,1997), Montgomery App. No. 16288, unreported, we observed:
 "Because the trier of fact sees and hears the witnesses and is particularly competent to decide `whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility."
Defendant was found guilty of violating R.C. 2911.01(A)(3) which provides:
 "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
"* * *
 "Inflict, or attempt to inflict, serious physical harm on another."
Defendant was also found guilty of violating R.C. 2911.02 and R.C.2911.12 which provide respectively:
 "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
"* * *
 "(3) Use or threaten the immediate use of force against another.
 "(A) No person, by force, stealth, or deception shall do any of the following:
 "(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense."
Defendant argues that his convictions are against the manifest weight of the evidence because there is no physical evidence linking him to these crimes. That claim is clearly incorrect. DNA testing revealed that the victim's blood was on Defendant Snyder's jacket. Defendant also relies on the argument that the State's case against him is wholly dependent upon the testimony of his co-defendant, Stephen Garner, and that Garner's testimony is not believable because it conflicts with the testimony of other witnesses, particularly the victim, Marvin Wiley.
Garner's testimony, if believed, along with Erbaugh's testimony, clearly implicates Defendant in these crimes. As we previously noted, it is the duty of the jury as trier of fact to resolve conflicts in the testimony and determine the credibility of the witnesses who testified.State v. DeHass (1967), 10 Ohio St.2d 230.
In assessing the credibility of Stephen Garner's testimony, the jury was made aware of his possible motive for testifying; that in exchange for his testimony against Defendant, Garner would face only one aggravated robbery charge with no gun specification, rather than face the same charges and specifications as Defendant, and that Garner would receive no more than five to seven years imprisonment.
We agree that Garner's testimony at trial was inconsistent at times with the testimony given by the victim, Marvin Wiley, as to some of the details surrounding the commission of these crimes. However, those matters are minor at best. The testimony of Garner and Wiley does not conflict on the essential facts that the perpetrators physically assaulted and robbed Marvin Wiley, conduct which gives rise to these charges and supports Defendant's convictions.
In reviewing the entire record in this case, as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred., Defendant's conviction is not against the manifest weight of the evidence., Defendant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN FAILING TO EXCLUDE THE TESTIMONY OF STEPHEN GARNER PURSUANT TO RULE 16(E)(3) OF THE OHIO RULES OF CRIMINAL PROCEDURE."
Just two days before Defendant's trial began, on July 16, 2001, police interviewed co-defendant Stephen Garner. Shortly before Garner testified at Defendant's trial on behalf of the State, Defendant objected that Garner's testimony should be excluded as a sanction for the State's violation of the discovery rules. Defendant argued that the State had failed to provide the defense with written summaries of the oral statements Garner made to police on July 16th, as Crim.R. 16(B)(1)(a)(ii) requires.
The prosecutor responded that no written summaries were made of Garner's July 16th oral statements, and hence there was nothing to provide to defense counsel. The prosecutor additionally argued that Garner's July 16th statement was consistent with the previous statements Garner had made on or about April 26 and 27, 2001, which had been provided to defense counsel.
The trial court concluded that while the State had failed to comply with the applicable discovery rules, Defendant suffered no prejudice as a result. Therefore, the court refused to impose any sanction and permitted Garner to testify at Defendant's trial., Defendant argues that the trial court abused its discretion in not excluding Garner's trial testimony as a sanction for the State's discovery violation. We disagree.
Having initially been charged with the same offenses as Defendant, there is no question in this case that Garner was a co-defendant and not merely a witness. Thus, the requirement in Crim.R. 16(B)(1)(a) that the State disclose to the defense statements made by a defendant or a co-defendant applies to the statements Garner made to investigators.See: State v. Lane (1976), 49 Ohio St.2d 77.
Crim.R. 16(B)(1)(a)(ii) provides:
 "Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
"* * *
 "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer."
Construing the above provision, the Ohio Supreme Court in State v.Bidinost (1994), 71 Ohio St.3d 449, held that the prosecutor has a dutyto record, reduce to a written summary, a co-defendant's oral statementsto police, and to timely provide such material to the defense. Assumingthat Garner remained a co-defendant even after entering into a negotiatedplea agreement with the State, the prosecutor had a duty under Bidinost,supra, to reduce to a written summary Garner's oral statements to police on July 16th, and to timely provide those summaries to the defense. The failure to do so constitutes a violation of the discovery rules by the State.
In terms of what is the appropriate sanction, if any, to impose for that discovery violation, Crim.R. 16(E)(3) gives the trial court discretion:
 "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." See also: State v. Bidinost, supra.
Ordinarily, a trial court must impose the least severe sanction for a discovery violation that is consistent with the purposes of the rules of discovery. City of Lakewood v. Papadelis (1987), 32 Ohio St.3d 1,syllabus. In State v. Parson (1983), 6 Ohio St.3d 442, the Ohio Supreme Court stated:
 "Where, in a criminal trial, the prosecution fails to comply with Crim.R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted." Syllabus.
 Applying Parson to this case, we conclude that the trial court did notabuse its discretion in refusing to exclude Garner's trial testimony as asanction for the State's discovery violation. This record does notdemonstrate that the prosecutor's failure to disclose was a willfulviolation of Crim.R. 16. The prosecutor assumed that since the July 16thoral statements made by the co-defendant, Garner, were never reduced to awritten summary, there was nothing discoverable to provide to defensecounsel, and hence no violation of Crim.R. 16(B)(1)(a)(ii). Althoughthat assumption is clearly erroneous, Bidinost, supra, it does not equatewith a willful violation of the discovery rules.
 Furthermore, we note that only two days elapsed between Garner'sstatements to police on July 16, and Defendant's claim that the Stateimproperly withheld those statements, which was asserted just prior toGarner testifying at Defendant's trial on July 18. Given this shortinterval of time, and the prosecutor's assertion that the interview ofGarner on July 16 was part of the plea negotiation process, no clearevidence of a willful discovery violation appears in this record.
 As to whether foreknowledge of Garner's July 16 statements would havebenefitted Defendant in preparing his defense, Defendant speculates thatforeknowledge would have permitted him to more effectively attackGarner's credibility at trial via prior inconsistent statements. Wedisagree.
 Prior to Garner testifying at Defendant's trial, the court permitteddefense counsel to voir dire the police officer who had interviewedGarner on July 16, Det. Trissell, as to the contents of Garner'sstatement in order to determine if that July 16th statement wasinconsistent with the previous statements made by Garner in April, whichhad been provided to defense counsel. That voir dire examination revealedno major differences, but only minor inconsistencies and variationsbetween Garner's April and July statements.
 For instance, in his April statement Garner indicated that PhilipMacias had blood on his clothes after he assaulted Mr. Wiley, and thatMacias threw those clothes into a dumpster in Greenville, Ohio. In hisJuly 16 statement, Garner indicated that Philip Macias' bloody clotheswere put into a trash bag at Tracy Slomba's apartment. That apartment isin Greenville, Ohio. The two propositions are not inconsistent. Also,in his July 16 statement, Garner indicated that after committing thesecrimes the perpetrators drove to Dayton and bought crack cocaine, andthen stopped and bought beer before returning to Tracy Slomba'sapartment. Garner did not mention that the perpetrators had purchasedcocaine and beer after committing these crimes in his April statement.
 These variations in Garner's statements are insubstantial, at best, anddo not impact the testimony about the substantive conduct giving rise tothese offenses. Moreover, the trial record demonstrates that Defendantthoroughly cross-examined Garner at trial regarding the inconsistenciesbetween his trial testimony, his previous statements, and the testimonygiven by other State's witnesses.
 The differences between Garner's April statements, which were furnishedto defense counsel, and his July 16 statement that was not, were minor innature. Further, the substance of Garner's July 16 statement was madeknown to defense counsel before Garner testified at Defendant's trial,and yet defense counsel did not request a continuance to prepare hiscross-examination of Garner. Therefore, this record fails to demonstratethat foreknowledge of Garner's July 16 statement would have benefittedDefendant in preparing his defense.
 As to whether Defendant was prejudiced by admission of Garner'sundisclosed statement, this record demonstrates that Garner's July 16statement was not admitted as evidence at Defendant's trial. For reasonspreviously discussed, this record fails to demonstrate that Defendantsuffered any prejudice as a result of the State's discovery violation.Therefore, we cannot conclude that the trial court abused its discretionin refusing to exclude Garner's trial testimony as a sanction for theState's discovery violation. Parson, supra.
The second assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and FAIN, J., concur.