JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Travis Robinson appeals his jury trial conviction for aggravated robbery, felonious assault, and kidnaping, all with firearm specifications.
 {¶ 2} One evening around eleven o'clock, the victim, a forty-eight-year old man, was walking home from a convenience store, where he had gone to buy cigarettes. As he was walking, a young man approached him and stuck a chrome revolver in his face. Because he was stunned, the victim did not respond to the man's orders. When he did not respond, another young man poked him in the back with a rifle. The victim turned to see the young man with the rifle, as well as several other young men, and decided to try to run toward a busy intersection up the street.
 {¶ 3} As he ran away, he heard someone yell, "Get him." He was then struck in the head, knocked down, and pulled back down the street into some bushes, after which he was kicked, beaten, and robbed of his cell phone and $200.00. When a police car pulled up, the young men scattered. The victim was taken to the hospital, where he received stitches to several of his wounds.
 {¶ 4} Having received a description of the gunman with the revolver, the police searched the area. One officer saw a young man who did not fit the description of the assailant with the revolver walk out a secluded parking lot. After this man turned toward the bushes, mouthed something, and walked down the street, another man ran out of the bushes and took flight. The police captured the man from the bushes, who indeed matched the description of the person with the revolver. Several days later, at a photo lineup the officer identified defendant as the man he had seen walking away from the area on the night of the assault. This photo matched the description of the person the victim had identified as the man with the rifle.
 {¶ 5} The police then issued a search warrant for defendant. They found him several days later hiding in an attic crawlspace. He was arrested and charged with two counts of aggravated robbery, two counts of felonious assault, and one count of kidnaping.[1] His case was tried to a jury, and he was convicted on all three counts, with gun specifications. He timely appealed, stating four assignments of error. For his first assignment of error, defendant states:
 {¶ 6} "I. Travis Robinson has been deprived of his liberty without due process of law by his convictions which were not supported by sufficient evidence to prove his guilt beyond a reasonable doubt."
 {¶ 7} Defendant argues that the evidence presented at his trial was insufficient to support his conviction. Specifically, he claims that because the state did not prove that the rifle used in the crime was operable, the state failed to prove an element of the case as charged in the indictment, that is, that defendant used a firearm.
 {¶ 8} The standard required for sufficiency is explained inJenks:
 {¶ 9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" State v. Jenks
(1991), 61 Ohio St.3d 259, syllabus paragraph two.
 {¶ 10} The definition of a firearm is found in R.C. 2923.11(B):
 {¶ 11} "(1) `Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
 {¶ 12} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 13} The Ohio Supreme Court clarified this issue in Thompkins: "A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by theindividual in control of the firearm. (State v. Murphy [1990],49 Ohio St.3d 206, 551 N.E.2d 932, State v. Jenks [1991],61 Ohio St.3d 259, 574 N.E.2d 492, and State v. Dixon [1995],71 Ohio St.3d 608, 646 N.E.2d 453, followed; R.C. 2923.11[B][1] and [2], construed and applied.)" State v. Thompkins (1997), 78 Ohio St.3d 386, syllabus paragraph one, emphasis added.
 {¶ 14} In the case at bar, the person holding the rifle pushed it into the victim's back when he did not respond to the other gunman's orders. Clearly the jury could construe the shove of the barrel of the rifle into the victim's back as a threat that he would be shot by that rifle if he did not comply. This action and the logical inference which could be deduced from it provide sufficient evidence, if believed, to support the conclusion that the rifle fit the statutory definition of a qualifying firearm.
 {¶ 15} Next, defendant claims that because the testimony was contradictory as to whether or not he was the person holding the rifle behind the victim, the state did not prove the gun specification on which he was convicted. The victim definitely identified him as the person holding the rifle, but a co-defendant who testified stated that another of the men had held the rifle and defendant had only participated in the beating and robbery. Defendant claims that the "conflicting interpretations of the evidence * * * dooms the State's case against" defendant. Appellant's brief at 9. As noted above, however, conflicting evidence does not doom the sufficiency of a case. If it did, few convictions would ensue. The standard articulated by the Jenks court states that the appellate court should "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." The testimony of the victim, if believed, was sufficient to convince the jury of the defendant's guilt.
 {¶ 16} Neither of defendant's arguments concerning the sufficiency of the evidence has merit; accordingly, this assignment of error is overruled.
 {¶ 17} For his second assignment of error, defendant states:
 {¶ 18} "II. Travis Robinson has been deprived of his constitutional right not to be put in into jeopardy two times for the same offense by his convictions on various allied offenses of similar import in the case at bar."
 {¶ 19} Defendant argues that the kidnaping and the aggravated robbery were allied offenses because the victim was dragged only far enough to finish the robbery. The animus for the two crimes, he says were the same, therefore making them crimes committed with similar import. Although counsel did not raise this issue at trial, defendant argues that the court should reverse the dual conviction under the plain error standard.[2]
 {¶ 20} Allied offenses are addressed in R.C. 2941.25, which states:
 {¶ 21} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain both counts for all such offenses, but the defendant may be convicted of only one."
 {¶ 22} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 23} Defendant's argument fails in light of State v. Rance and its progeny. As this court stated in Latson: "The Ohio Supreme Court has held that the elements of alleged allied offenses are to be compared in the abstract. State v. Rance (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, paragraph one of syllabus. The Rance decision overruled Newark v.Vazirani (1990), 48 Ohio St.3d 81, 549 N.E.2d 520, and its progeny, which required the comparison of the elements of each crime by referring to the particular facts in the indictment.
 {¶ 24} In a previous decision, this court provided a full analysis of this same issue: "Under Rance, a court in determining if two crimes are crimes of similar import, must align the elements of each crime in the abstract to determine whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. Id. 85 Ohio St.3d 632 at 638.
 {¶ 25} "If the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. Id. 85 Ohio St.3d 632 at 638-639.
 {¶ 26} "In the present case, Latson was convicted of one count of aggravated robbery and one count of kidnapping. Aggravated robbery is defined pursuant to R.C. 2911.01(A)(1) as:
 {¶ 27} "`(A) No person in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense shall do any of the following:
 {¶ 28} "`(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *.'
 {¶ 29} "Pursuant to R.C. 2905.01(A)(2)(3), kidnapping is defined, in relevant part, as:
 {¶ 30} "`(A) No person by force, threat, or deception, * * * shall remove another person from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 31} "* * *
 {¶ 32} "`(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 33} "`(3) To terrorize, or to inflict serious physical harm on the victim or another;'
 {¶ 34} "* * *.
 {¶ 35} "An abstract alignment of the elements of the crime of aggravated robbery and kidnapping demonstrates that the elements do not correspond to such a degree as to constitute crimes of similar import. The conduct creating culpability for kidnapping under R.C. 2905.01(A)(2) must be for the purpose of facilitating the commission of a felony. The conduct creating culpability for aggravated robbery, however, includes the committing of a theft offense as listed in R.C. 2913.01, many of which are misdemeanor theft offenses. State v. Pack, (Nov. 14, 2000), Auglaize App. No. 2-2000-20; State v. Lee, (Oct. 8, 1999), Hancock App. No. 5-99-20.
 {¶ 36} "Aggravated robbery also does not require that the offender have the intent to terrorize or cause serious physical harm to the victim as required for kidnapping pursuant to R.C. 2905.01(A)(3).
 {¶ 37} "Aggravated robbery also requires a deadly weapon to be on or about the person, or under the control of the accused. Kidnapping, however, does not require the presence of a deadly weapon. State v. Foo, (Oct. 25, 2000), Summit App. No. C.A. No. 19753; State v. Jacobs, (Sept. 30, 1999), Hancock App. No. 5-99-17.
 {¶ 38} "Therefore, based on the differences between the two offenses, we affirm the trial court's finding that aggravated robbery and kidnapping are not allied offenses of similar import." State v. Latson, (Nov. 1, 2001), Cuyahoga App. No. 79093.
 {¶ 39} Similarly here, the victim was seriously physically harmed in the course of the kidnapping. That the defendant and his cohorts beat and kicked the victim further after they dragged him down the street into the bushes satisfies the elements of kidnapping pursuant to R.C.2905.01(A)(3). This harm is not an element of aggravated robbery. Also, as in Latson, the defendant used a gun. The gun is a necessary element of the charge of aggravated robbery as indicted, but it is not an element of kidnapping.
 {¶ 40} These offenses are not, therefore, allied offenses. Because they do not fit the first requirement of R.C. 2941.25, no examination of whether they have the same animus is necessary.
 {¶ 41} The second assignment of error is overruled. For his third assignment of error, defendant states:
 {¶ 42} "III. The trial court erred and denied Travis Robinson his constitutional right to a fair trial before a jury, when it gave an improper instruction to the jury."
 {¶ 43} Defendant claims that the court erred when it informed the jury that the rifle was operable, although the revolver turned out to be a toy and therefore was not operable. Because an operable firearm is an essential element of the crime, a finding that the rifle was operable is a prerequisite to defendant's conviction on the firearm charge.
 {¶ 44} Early in the jury charge, the court told the jury that the rifle and fake revolver would not be sent into the jury room with the rest of the evidence. Explaining this decision, he said:
 {¶ 45} "Now, I think a firearm was an exhibit, the shotgun, that is a firearm. There was also a weapon that was not operable but it was brandished as a weapon. I hesitate to call it a toy, but it was not an operable firearm.
 {¶ 46} "* * *
 {¶ 47} "And that will be in evidence. But for security reasons, we do not permit weapons, whether operable or not, to go to the jury room unless it's absolutely necessary for you to determine an element of a crime. Because you could imagine, even an unloaded weapon, if you brandish an unloaded shotgun in this courthouse, all hell is going to break loose. If some people got access to even a toy gun and wanted to attempt an escape, things would occur.
 {¶ 48} "Also, there have been incidents where people have taken handguns back to a jury room, they've loaded a handgun, now we've got a loaded handgun in a room with 13 people or 12 people in the room so we don't let the guns go to the jury room for that reason." Tr. at 355-356.
 {¶ 49} Defendant is correct in his statement that the court told the jury that the rifle was a firearm. Later in the charge, however, the court defined a firearm for the jury: "A firearm is, as I've said before, means [sic] any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. Firearm includes an unloaded firearm and any firearm which is inoperable, but which could be rendered operable.
 {¶ 50} "Now, when deciding whether a firearm is capable of expelling or propelling one or more projectiles by the action of explosive device or combustible propellant, you must rely on the circumstantial evidence, including but not limited to the statement or representations and actions of the individuals that were controlling the firearm." Tr. At 365-366. At the end of the charge, the court told the jury, "if I have done anything or said anything in any way to give you any indication of what I think the probable outcome of this case is, I instruct you to ignore that." The trial court erred when it told the jury that the rifle was an operable firearm: that question of fact was an issue for the jury. Defendant did not object at trial, however, to the charge given the jury by the trial court, as required by Crim. R. 30, which states in part:
 {¶ 51} "A party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 {¶ 52} The Supreme Court of Ohio has previously ruled that "[f]ailure to timely object, pursuant to Crim. R. 30, precludes appellant from assigning as error the trial court's charge to the jury in the instant cause, State v. Lane (1976), 49 Ohio St.2d 77, and an appellate court need not review such alleged error, in the absence of plain error, under Crim. R. 52(B). State v. Lockett (1976), 49 Ohio St.2d 48." Statev. Faulkner (1978), 56 Ohio St.2d 42, 47.
 {¶ 53} The Ohio Supreme Court has set a strict standard for using plain error when examining alleged errors in jury instructions: "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood 91983),3 Ohio St.3d 12, syllabus, citations omitted. The Underwood court added: "the plain error rule should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice." Underwood at 14.
 {¶ 54} Despite the trial court's error in stating that the rifle was an operable firearm, its jury instructions clearly indicated to the jury that this was an issue which they were required to decide. The court also informed them that they should disregard any comments he made which would sway them as to the verdict.
 {¶ 55} More importantly, however, there is no evidence that the court's comment resulted in a clear miscarriage of justice. More than enough evidence exists in the record to support the conclusion that the rifle fits the definition of a firearm. The court's error does not rise to the level of plain error constituting a miscarriage of justice. The third assignment of error is overruled.
 {¶ 56} "IV. Travis Robinson was deprived of his constitutional right to effective assistance of counsel, by trial counsel's failure to preserve issues for review by the court of appeals."
 {¶ 57} Defendant claims that the errors specified in the second and third assignments of error, along with trial counsel's failure to preserve them as issues for the record, constitute ineffective assistance of counsel. He also points out that this failure to object cannot be considered trial strategy because if he had objected to them, "counsel had nothing to lose and everything to gain, [and] no reasonable tactical explanation can justify counsel's failure to argue allied offenses." Appellant's brief at 18. Further, he states that there was "no tactical reason not to object to the erroneous jury instruction * * *." Id.
 {¶ 58} The Ohio Supreme Court defined the necessary findings which an appellate court must make to find ineffective assistance of counsel in State v. Bradley (1989), 42 Ohio St.3d 136:
 {¶ 59} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." Id., syllabus paragraph two. The court also defined the prejudice required:
 {¶ 60} "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id., syllabus paragraph three.
 {¶ 61} Even if counsel's assistance were deemed to have been ineffective, defendant has failed to show that the outcome of the trial would have been different but for the alleged errors. The issue raised in the second assignment of error, allied offenses, has no merit. Because this issue is without merit, failure to raise it cannot be considered substandard representation and certainly did not prejudice the outcome of the trial.
 {¶ 62} The issue raised in the third assignment of error, the court's misstatement during jury instructions, even if found to be error, would not have changed the outcome of the trial. As noted in the third assignment of error, sufficient evidence exists in the record to support defendant's conviction.
 {¶ 63} The fourth assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., and JAMES J. SWEENEY, J., CONCUR.
[1] Defendant had originally been charged with another assault and robbery, which occurred the same night. He was acquitted on these charges.
[2] Civ.R. 52(B) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."