[Cite as *State v. Taylor*, 2013-Ohio-1587.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

       Plaintiff-Appellee

v.

TIFFANY TAYLOR


       Defendant-Appellant

Appellate Case No.    25146

Trial Court Case No.   2011-CR-2377

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of April, 2013.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN,  Atty. Reg. No. 0076791, 75 North Pioneer Blvd., Springboro, Ohio 45066
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, Tiffany Taylor, appeals from her criminal conviction and sentence on two counts of Felonious Assault following a jury trial.  Appellant contends that the jury's verdict was against the manifest weight of the evidence.  In addition, Appellant claims that the prosecutor engaged in prosecutorial misconduct by making allegedly improper remarks regarding the burden of proof during closing argument.  We conclude that the jury verdict was not against the manifest weight of the evidence.  We also conclude that the prosecutor did not engage in prosecutorial misconduct.  Accordingly, the judgment of the trial court will be affirmed.

## I.   Facts & Course of Proceedings

{¶ 2}    On the morning of July 18, 2011, Jessica Tarrance was driving her six-year-old daughter to day care with her boyfriend, Kenyon Jones, riding as a passenger.  As they were traveling on Elsmere Street in Dayton, Ohio, they noticed that the Appellant was following them in her car.  The Appellant was Jones' ex-girlfriend, and their relationship did not end well.  The Appellant was upset at Jones for taking some movies that belonged to her children when he moved out.

{¶ 3}    Upon arriving at the day care facility, Tarrance and Jones parked next to the curb, and the Appellant pulled her vehicle beside them.  Tarrance and her daughter went inside the day care facility, and Jones was left sitting in the vehicle.  The Appellant then exited her vehicle and approached Jones.  She asked him to get out of his vehicle and talk to her.  When Jones refused, the Appellant threatened to damage his vehicle.  Jones then got out of his vehicle,

and the Appellant demanded that he return her children's movies. Jones said he would not give the movies back until she returned some property that she had taken from him. The Appellant then grabbed the collar of Jones' shirt with one hand and threatened to physically harm him.

{¶ 4} Tarrance returned from the day care facility and saw the Appellant holding Jones by his shirt collar. Jones attempted to remove the Appellant's hand from his shirt, and as a result, the two began to scuffle. As they scuffled, Jones noticed a pocket knife in the Appellant's other hand. He tried to back away from the knife by pushing himself away from the Appellant. As he pushed away, he was able to escape the Appellant's grasp by slipping out of his shirt and undershirt. His outer shirt was cut in the process.

{¶ 5} Meanwhile, in an effort to get the Appellant away from the day care facility, Tarrance told the Appellant that if she wanted to fight, to move up the street. Tarrance then attempted to get back into her vehicle, but it was locked. Tarrance testified that she thought about taking the Appellant's vehicle, which was left running in the street, but as she looked over at the vehicle, the Appellant suddenly ran toward her. Tarrance put her fists up, preparing to fight. When the Appellant was an arm's-length away, Tarrance realized that the Appellant had a shiny blade in the palm of her hand. Tarrance then backed up and put her hands up to protect her face. Immediately thereafter, Tarrance was stabbed in her left palm.

{¶ 6} After stabbing Tarrance, the Appellant ran back to her vehicle. Jones grabbed his undershirt and gave it to Tarrance, and she wrapped it around her bleeding hand. Tarrance then called 911 from the street while the Appellant remained seated in her parked vehicle. The 911 call recorded Tarrance and the Appellant arguing. Tarrance said, "Because you can't fight, you're going to run up with a knife?" Trial Transcript, Vol. II, p. 210, ln. 15 (referring to

content of 911 tape recording).  The Appellant responded, "Yeah. I was going to stab you and him.  Now how about that?"  *Id*. at Vol. II, p. 211, ln. 9-10 (referring to content of 911 tape recording).

{¶ 7}    As Tarrance began to describe the Appellant's car and license plate number to the 911 dispatcher, the Appellant backed her vehicle up, and pulled it forward to leave.  As the Appellant pulled forward, she swerved and hit Tarrance and Jones' vehicle. The Appellant then immediately drove away.  About five minutes later, Officer Chuck Hurley and Officer William Gross of the Dayton Police Department arrived at the scene.  Tarrance and Jones gave brief statements to the officers, and one or two minutes later, an ambulance arrived for Tarrance. Tarrance was taken to Good Samaritan Hospital where she received sutures for the laceration on her left palm.

{¶ 8}    Approximately two and one-half hours later, the Appellant called the Dayton Police Department and claimed that she had been assaulted during the incident with Tarrance and Jones.  The Appellant also changed the license plates on her vehicle.  Shortly thereafter, the Appellant was arrested for felonious assault, and the police towed her vehicle.  The day after her arrest, she gave a statement to Detective Michael August of the Dayton Police Department regarding the events leading up to her arrest.  She stated that she had approached Jones about her children's movies in front of the day care facility.  She admitted to grabbing the collar of his shirt and scuffling with him. She stated that Tarrance took the keys from her car's ignition, and that she thought Tarrance was going to take her car.  The Appellant claimed that she fought with Tarrance over the keys and that Tarrance was cut by a corkscrew that was on her key chain.

{¶ 9}    Tarrance testified that she did not take the Appellant's car keys.  During the

investigation of this matter, a corkscrew was not found nor was it turned over to police. A knife was also not found.

{¶ 10}    On August 15, 2011, the Appellant was indicted on two counts of felonious assault. On August 18, 2011, the Appellant pleaded not guilty to the charges. A jury trial was held on March 5th and 6th of 2012. After hearing all the evidence, which included the 911 tape recording, the jury returned verdicts of guilty on both counts of Felonious Assault. Following the verdicts, the trial court sentenced the Appellant to community control sanctions for a period not to exceed five years. The Appellant now appeals her conviction and sentence.

## II.    Was the Conviction Against the Manifest Weight of the Evidence?

{¶ 11}    The Appellant's First Assignment of Error states that:

The jury's verdicts should be reversed as they were against the manifest weight of the evidence.

{¶ 12}    Under this assignment of error, the Appellant contends that the jury's verdicts are against the manifest weight of the evidence because of inconsistencies in testimony given by Jessica Tarrance and Kenyon Jones. The Appellant also argues that her statement given to Detective August, which explains her version of the July 18, 2011 incident, is more credible, and contradicts both Tarrance's and Jones' testimony.

{¶ 13}    "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v.*

*Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 14}** We have reviewed the entire record and find no basis upon which to conclude that the jury clearly lost its way and created a manifest miscarriage of justice when it found that the Appellant was guilty of felonious assault. To be guilty of Felonious Assault, a defendant must knowingly "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶ 15}** In this case, the record establishes that on the morning of July 18, 2011, the Appellant approached Jones outside the day care center, grabbed his shirt collar, and demanded that he return her children's movies. There is also no dispute that the Appellant and Tarrance had a physical altercation, and that Tarrance's left palm was stabbed as a result. The Appellant told police that Tarrance was cut by a corkscrew on her key chain while they were fighting over the Appellant's car keys. Tarrance testified that she never took the Appellant's car keys, and that she saw a blade of a knife in the Appellant's hand. Jones also testified that he saw the Appellant holding a pocket knife. The testimony of Tarrance and Jones is supported by the 911 recording which captured the Appellant admitting to having a knife and stating that it was her

intent to stab Tarrance and Jones.

{¶ 16}  When considering the Appellant's statements in the 911 recording in conjunction with the fact that Tarrance was stabbed, the evidence does not weigh heavily against finding that the Appellant knowingly caused physical harm to Tarrance using a deadly weapon.  Likewise, when considering the Appellant's statements in the 911 recording in conjunction with the fact that Jones' shirt was cut, the evidence does not weigh heavily against finding that the Appellant knowingly attempted to cause physical harm to Jones using a deadly weapon.

{¶ 17}  The Appellant argues that the jury weighed Jones' and Tarrance's credibility improperly because it chose to ignore three inconsistencies in their trial testimony.  The first inconsistency is related to Tarrance's testimony that she saw the Appellant holding Jones by his shirt collar.  The Appellant argues that Tarrance's testimony is inconsistent because Tarrance later testified that Jones was not wearing a shirt when she came out of the day care facility. This inconsistency is irrelevant, given that the Appellant admitted to grabbing Jones' collar and scuffling with him in her statement to Detective August.

{¶ 18}  The second inconsistency is related to Tarrance's testimony that Jones and the Appellant were talking so quietly that she could not hear them.  The Appellant argues that Tarrance's testimony is inconsistent because she had previously testified at the preliminary hearing that the two were "whispering".  There is no inconsistency here.  Whispering and talking quietly are similar descriptions of the activity Tarrance observed.

{¶ 19}  The third inconsistency is related to Jones' testimony that the Appellant had a knife in her right hand when she grabbed his shirt collar.  The Appellant argues that Jones' testimony is inconsistent because he had previously testified at the preliminary hearing that the

knife was in the Appellant's left hand. Once again, we find this inconsistency to be of no consequence. The weight of the evidence supports a finding that the Appellant had a knife. Whether it was in Appellant's left hand or right hand is not determinative.

{¶ 20} Based on the preceding discussion, there is no basis upon which to conclude that the jury clearly lost its way and created a manifest miscarriage of justice when it found the Appellant guilty of two counts of Felonious Assault. Accordingly the First Assignment of Error is overruled.

### III. Did the Prosecutor's Remarks During Closing Argument Amount to Prosecutorial Misconduct?

{¶ 21} The Appellant's Second Assignment of Error states that:

The prosecutor's improper remarks during closing argument attempting to shift the burden of proof to the Appellant amounted to prosecutorial misconduct.

{¶ 22} Under this assignment of error, the Appellant argues that the following statement by the prosecutor during closing argument was improper and affected the substantial rights of the Appellant.

How logical would it have been for her to ditch the knife that she knows caused the cut to Jessica Tarrance's hand? How far fetched is that? Where is – * * * Where is the keychain with the corkscrew, ladies and gentlemen? Trial Transcript, Vol. II, p. 422, ln. 23-25; p. 423, ln. 4-5.

{¶ 23} The Appellant objected to this statement at trial on grounds that it shifted the burden of proof to the Appellant. The trial court overruled the objection, finding that the statement did not shift the burden of proof. The prosecutor then expanded the argument by

stating:

> Where is the keychain with the corkscrew? It doesn't exist. You heard Detective August tell you that it wasn't recovered when the police went to tow the car. You heard Detective August tell you that it wasn't recovered when the police went to arrest Tiffany Taylor.
>
> The Defendant didn't say, "Oh yes, by the way, I did cut Jessica. It was an accident. And here's the keychain that was used during the struggle that we had." She didn't produce that. If you were truly the victim of an accident and you were trying to make things right with the police, wouldn't you show them what was involved? Trial Transcript, Vol. II p. 423 ln. 14-24.

**{¶ 24}** " 'The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.' " *State v. Frazier*, 73 Ohio St.3d 323, 341-342, 652 N.E.2d 1000 (1995), quoting *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[T]he closing argument must be reviewed in its entirety" to determine prejudicial error. *Frazier* at 342, citing *State v. Moritz*, 63 Ohio St.2d 150, 157, 407 N.E.2d 1268 (1980).

A. The Prosecutor's Remarks Were Not Improper

**{¶ 25}** " 'Parties are granted latitude in closing arguments, and the question as to the propriety of these arguments is generally considered one falling within the sound discretion of the trial court.' " *Frazier* at 341, quoting *State v. Loza,* 71 Ohio St.3d 61*,* 78, 641 N.E. 2d 1082 (1994); *State v. Maurer*, 15 Ohio St.3d 239, 269, 473 N.E.2d 768 (1984). "It is not improper for the prosecution, in closing, to point out the lack of evidence supporting the defense theory of

the case." *State v. Jackson*, 8th Dist. Cuyahoga No. 76141, 2000 WL 426556, *11 (April 20, 2000), citing *State v. Williams*, 23 Ohio St.3d 16, 20, 490 N.E.2d 906 (1986). "The prosecution is not prevented from commenting upon the failure of the defense to offer evidence in support of its case." *Williams* at 20, citing *Lockett v. Ohio,* 438 U.S. 586, 595, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *State v. Lane*, 49 Ohio St.2d 77, 86, 358 N.E.2d 1081 (1976).

{¶ 26}     In this case, the prosecutor's statement was not improper.  When read in the context of the entire closing argument, it is apparent that the prosecutor's statement is not an attempt by the prosecutor to shift the burden of proof.   The prosecutor is simply pointing out the fact that there is no evidence to support the Appellant's claim that Tarrance was cut with a corkscrew.   There is nothing improper about this argument because the prosecution is permitted to comment on the failure of the defense to offer evidence in support of its case.

B.   The Prosecutor's Remarks Did Not Prejudicially Affect the Substantial Rights of the

Appellant

{¶ 27}     "For a prosecutor's closing argument to be prejudicial, the remarks must be 'so inflammatory as to render the jury's decision a product solely of passion and prejudice.' " *State v. Arrone*, 2d Dist. Greene No. 2005 CA 89, 2006-Ohio-4144, ¶ 126, quoting *Williams* at 20. Assuming *arguendo* that the prosecutor's statement in this case was improper, reversible error exists "only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found appellant guilty." *State v. Benge*, 75 Ohio St.3d 136, 142, 661 N.E.2d 1019 (1996), citing *Loza,* 71 Ohio St.3d at 78, 641 N.E.2d 1082.

{¶ 28}     In this case, the record fails to indicate that the prosecutor's statement impacted the verdict.   The jury still would have heard all the witness testimony regarding the knife.   It

would have also heard the 911 tape recording in which the Appellant admits to having a knife and her plan to stab Jones and Tarrance.   Given this evidence, it is not clear beyond a reasonable doubt that the prosecutor's statement changed the outcome of the trial, or prevented Appellant from receiving a fair trial.   Furthermore, the prosecution's remarks were not of a nature to render the jury's decision a product solely of passion and prejudice.

{¶ 29}   Based on the preceding discussion, the prosecutor's statement was not improper and it did not prejudicially affect the substantial rights of the Appellant.   Accordingly we find no prosecutorial misconduct.   The Appellant's Second Assignment of Error is overruled.

## IV.   Conclusion

{¶ 30}   All of Appellant's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.


Copies mailed to:

Mathias H. Heck
Andrew T. French
Marshall G. Lachman
Hon. Mary Lynn Wiseman