**[Cite as *State v. Phifer*, 2021-Ohio-521.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-13 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-184 |
| | : | |
| VENZER A. PHIFER, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of February, 2021.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. No. 0034517, 135 West Dorothy Lane, Suite 117, Dayton, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Venzer A. Phifer, Jr., appeals from his conviction for aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2), a felony of the first degree.  Phifer's conviction was accompanied by a specification indicating that the offense was committed in the vicinity of a juvenile, as defined by R.C. 2925.01.  Phifer filed a timely notice of appeal on March 11, 2020.

{¶ 2} The incident which formed the basis of Phifer's conviction occurred on December 18, 2018, when Adult Probation Officer (APA) Melena Starkey, accompanied by three other APA officers, scheduled a home visit to Phifer's residence on Superior Avenue in Springfield, Ohio.   Starkey testified that prior to visiting Phifer's residence, she asked deputies from the Clark County Sheriff's Office to perform surveillance near and around the residence for safety and security purposes.  Detective Jonathan Snyder testified that he and Detective Nawman arrived near Phifer's residence approximately 30 minutes before the APA officers arrived and began surveilling the area.

{¶ 3} Detective Nawman testified that while he and Detective Snyder were conducting surveillance of Phifer's residence, he observed two individuals arrive in a blue vehicle.   Detective Nawman then observed Phifer exit the residence, walk to the vehicle, and speak to the individuals.   Detective Nawman also testified that he observed Phifer walk around to the passenger side of the vehicle and put his hands inside the passenger side window.   Detective Nawman testified that, although he did not see drugs being exchanged, he did observe one of the individuals give money to Phifer.   On the basis of what he observed, Detective Nawman believed that he had just witnessed the sale of illegal drugs.   A short time later, Detective Nawman observed an individual exit a nearby residence and walk over to Phifer's residence.   The individual entered Phifer's residence

and exited approximately one or two minutes later, returning to the residence from which he came. Detective Nawman testified that the incidents he observed while surveilling Phifer's residence were consistent with the illegal sale of narcotics.

{¶ 4} Shortly thereafter, APA Starkey and the other APA officers arrived at Phifer's residence and went inside without the detectives. Starkey testified that, upon entering the residence, she encountered Phifer, another man identified as Robert L. Browning, Phifer's girlfriend, Angela Hagans, and a child approximately four to five years of age. Starkey testified that she and the other APA officers observed an open black duffle bag located on a recliner in the front room of the residence. Starkey testified that the duffle bag contained a baggie containing a white substance, which was later identified as crack cocaine. Starkey testified that she and the other APA officers also discovered another baggie containing a white substance and pills underneath a black sofa in the front room. This substance was later identified as methamphetamine. Starkey further testified that she found a "burner" cellphone under the cushions of the sofa. (Detective Nawman testified that a "burner" cellphone is a phone that cannot be traced to anyone and only indicates the provider network.) Starkey testified that the she and the other APA officers discovered a baggie containing marijuana and various drug paraphernalia during their search of the house. The APA officers placed all of the contraband and paraphernalia in a pile in the center of the front room of Phifer's residence, then contacted the detectives outside and asked for their assistance.

{¶ 5} Detective Snyder testified that he and Detective Nawman entered the residence and observed the pile of contraband in the middle of the floor. Detective Snyder testified that the piling of the contraband on the floor had not been ideal for

investigative purposes. Detective Snyder also testified that he was informed by the APA officers of specifically where they had found the baggies containing a white substances and pills and the burner cellphone. According to Detective Snyder, Browning admitted at the scene that the cocaine found in the duffle bag belonged to him, but he did not claim ownership of the other contraband. But in a later interview with Detective Snyder, Browning denied that the drugs in the duffle bag were his and stated that he believed that they belonged to Phifer.

{¶ 6} On the basis of what they observed in Phifer's residence, the detectives were able to obtain a search warrant for the residence and the contents of the cellphone. Upon searching the contents of the cellphone, the detectives discovered several text messages ostensibly regarding illegal drug sales and a text message from an unidentified individual asking, "This Vinz?" Detectives Snyder and Nawman testified that they believed "Vinz" was a nickname for Phifer, whose first name is "Venzer." This indicated to the detectives that the cellphone belonged to Phifer and that he used it for drug transactions. Detective Snyder testified that the text messages found in the burner cellphone had been sent and received approximately three days before the search occurred.

{¶ 7} On March 25, 2019, Phifer was indicted for the following offenses: Count I, aggravated trafficking in drugs (methamphetamine) (equal to or greater than five times the bulk amount), in violation of R.C. 2925.03(A)(2), a felony of the first degree; and aggravated possession of drugs (methamphetamine), in violation of R.C. 2925.11(A), a felony of the second degree. Count I was accompanied by a specification indicating that the offense was committed in the vicinity of a juvenile. Phifer pled not guilty to the

charged offenses.

{¶ 8} A two-day jury trial was held on January 14 and 15, 2020. Phifer was found guilty of both counts and the specification attached to Count I. At Phifer's sentencing on February 25, 2020, the trial court merged the two counts, and the State elected to proceed on Count I, aggravated trafficking in drugs. The trial court then sentenced Phifer to a mandatory prison term of ten years.

{¶ 9} It is from this judgment that Phifer now appeals.

{¶ 10} Phifer's first assignment of error is as follows:

THERE WAS ONLY CIRCUMSTANTIAL EVIDENCE OF CONSTRUCTIVE POSSESSION TO PROVE THE APPELLANT POSSESSED THE OVER BUL[K] METHAMPHETAMINE THAT WAS FOUND. THE CIRCUMSTANTIAL EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION AND THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} Phifer contends that the State presented insufficient evidence for the jury to find him guilty of aggravated trafficking in drugs and aggravated possession of drugs. Phifer also argues that the jury's findings were against the manifest weight of the evidence.

{¶ 12} "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted). *State v. Crowley*, 2d Dist. Clark No. 2007-CA-99, 2008-Ohio-4636, ¶ 12.

{¶ 13} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69. "A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " (Citations omitted.) *Id.* at ¶ 71.

{¶ 14} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 15} This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 16} R.C. 2925.03(A)(2), the drug trafficking statute, provides, in relevant part:

(A) No person shall knowingly do any of the following:

* * *

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶ 17} The drug possession statute that Phifer was found guilty of violating provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A).   Methamphetamine is a controlled substance. *See* R.C. 2925.11(II).   For purposes of drug offenses, " '[p]ossess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶ 18} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 19} Here, Phifer argues that the evidence was insufficient to establish that he knowingly sold or offered to sell methamphetamine or that he knowingly possessed methamphetamine.   However, Detective Nawman testified that while he and Detective Snyder were conducting surveillance of Phifer's residence, he observed two individuals

arrive in a blue vehicle, whereupon Phifer exited the residence, walked to the vehicle, and spoke to the individuals. Phifer then walked around to the passenger side of the vehicle and placed his hands inside the passenger side window. Detective Nawman testified that he did not see drugs being exchanged, but he did observe one the individuals give money to Phifer. Based upon his experience as a narcotics detective and law enforcement office for many years, Detective Nawman believed that he had just witnessed the sale of illegal drugs. Detective Nawman testified that, a short time later, he observed another individual exit a nearby residence, walk over to Phifer's residence, enter Phifer's residence, and then exit approximately one or two minutes later. Detective Nawman testified that the incidents he observed while surveilling Phifer's residence were consistent with the illegal sale of narcotics.

{¶ 20} APA Starkey and the other APA officers then arrived at Phifer's residence and went inside without the detectives; Starkey testified that she encountered several individuals, including Phifer and a young child, inside the residence. Starkey testified that she and the other APA officers observed an open black duffle bag on a recliner in the front room that contained a baggie containing a white substance; the substance was later identified as crack cocaine. Starkey also testified that she and the APA officers discovered another baggie containing a white substance and pills underneath a black sofa in the front room; this substance was later identified as over 15 grams of methamphetamine, over five times the bulk limit. Starkey testified that she and the other APA officers also found a "burner" cellphone under the cushions of the sofa, a baggie containing marijuana, and various other drug paraphernalia during their search of the house. After placing all of the contraband and paraphernalia in a pile in the front room

of Phifer's residence, the APA officers contacted the detectives and asked for their assistance. They told the detectives where they had found the various items.

{¶ 21} As previously stated, the detectives then obtained a search warrant for the burner cellphone and the rest of the residence. Upon searching the contents of the cellphone, the detectives found evidence that indicated drug trafficking in the following text messages/conversations:

1) Incoming Text: "Can you bring me a 10 at all?"[1]

2) Incoming Text: "This Vinz?"

   Reply: "Yea."

3) Incoming Text: "You got a gram?"

   Reply: "Yea."

4) Incoming Text: Will you bring it down?"

   Reply: "Got u [sic]."

One reply sent from the cellphone, ostensibly from Phifer, also mentioned payment for drugs using cellphone cash applications such as Venmo and Paypal. As previously stated, Detectives Snyder and Nawman testified that they believed "Vinz" was a nickname for Phifer, whose first name is "Venzer," which supported an inference that the cellphone belonged to Phifer, who used it for drug transactions. Both detectives also testified that they were unaware of any other individuals in the illegal drug trade in Springfield, Ohio, with the nickname "Vinz."

{¶ 22} Hagans, Phifer's girlfriend, testified on his behalf at trial. While Hagans

---

[1] Detective Nawman testified at trial that "a 10" is slang for a tenth of a gram of illegal drugs such as methamphetamine or heroin.

testified that the burner cellphone belonged to Browning, she also testified that Phifer slept and kept his belongings on the sofa under which the cellphone and baggie of methamphetamine were found. Hagans also testified and that it was Browning, not Phifer, that the detectives observed conducting a drug transaction with the individuals in the blue vehicle in front of the residence.

{¶ 23} Phifer argues that the evidence adduced by the State was insufficient to convict him because it was entirely circumstantial. We have held, however, that a defendant may be convicted based on direct evidence, circumstantial evidence, or both. *State v. Donley*, 2017-Ohio-562, 85 N.E.3d 324, ¶ 178 (2d Dist.). Circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988); *State v. Bennett*, 2d Dist. Montgomery No. 24576, 2012-Ohio-194, ¶ 11. In fact, in some cases, "circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence." *State v. Jackson*, 57 Ohio St.3d 29, 38, 565 N.E.2d 549 (1991).

{¶ 24} " 'A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence.' " *State v. Pounds*, 2d Dist. Montgomery No. 22469, 2008-Ohio-5384, ¶ 38, quoting *State v. Howland*, 12th Dist. Fayette No. 2006-08-035, 2008-Ohio-521, ¶ 32. "As long as the evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt, circumstantial evidence is sufficient to sustain a conviction." *State v. Whitehead*, 2d Dist. Montgomery No. 28334, 2019-Ohio-5141, ¶ 31, citing *McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75.

{¶ 25} In this case, the evidence, viewed in a light most favorable to the State,

established that Phifer knowingly possessed and trafficked in bulk amounts of methamphetamine. Accordingly, we find that the jury's findings of guilty on the charged offenses were supported by sufficient evidence.

{¶ 26} Furthermore, having reviewed the record, we find no merit in Phifer's manifest-weight challenge. It is well-settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. Here, the jury reasonably credited the testimony provided by the State's witnesses, applied that evidence and all reasonable inferences to the elements of the offense, and found Phifer guilty. Additionally, the jury was free to discredit Hagans's testimony that the burner cellphone belonged to Browning, not Phifer, and that it was Browning, not Phifer, that the detectives observed conducting a drug transaction with the individuals in the blue vehicle in front of the residence. Having reviewed the entire record, we cannot find that the evidence weighed heavily against conviction or that a manifest miscarriage of justice occurred.

{¶ 27} Phifer's first assignment of error is overruled.

{¶ 28} Phifer's second assignment of error is as follows:

THE PROSECUTOR'S INFLAMMATORY AND IMPROPER REMARKS IN CLOSING ARGUMENT PREJUDICED THE JURY'S VERDICT AND DENIED THE APPELLANT A FAIR TRIAL.

{¶ 29} In his second assignment, Phifer argues that he was denied a fair trial when the prosecutor made several improper and inflammatory remarks during his closing and rebuttal closing arguments. We note that Phifer did not object at trial to any of the conduct that forms the basis for this assignment of error, and therefore, he has waived all

but plain error.

{¶ 30} During closing argument, the prosecutor made the following comments regarding Phifer and the crimes for which he was charged:

And then, you know, they're also smart. They have buddies. They know that they have friends that are gonna come testify potentially at trial to help them get out of it. We didn't see that today. We almost – we didn't see anybody. We didn't see anybody testify to try to get him out.

* * *

So wrapping up, ladies and gentlemen, we have an opportunity today to take a drug dealer in Clark County off the streets. There's no doubt in my mind that Mr. Phifer indirectly provided drugs to someone in our town who has overdosed. There's no doubt in my mind. Statistically white males, age 25 to 54. That's me; that's my little brother; that's my dad; and that is people in the community.

{¶ 31} During its rebuttal closing argument, the prosecutor also made the following comments:

But, you know, today's a big deal. We're in the epicenter of the opioid epidemic. Here, Clark County, Ohio. This is ground zero for sure. And right there in front of us is one of the drug dealers. Ground zero. There he is.

{¶ 32} "In reviewing claims of prosecutorial misconduct, the test is whether the

prosecutor's remarks were improper and, if so, whether those comments prejudicially affected the substantial rights of the defendant." *State v. Quarles*, 2015-Ohio-3050, 35 N.E.3d 616, ¶ 64 (2d Dist.), citing *State v. Jones*, 90 Ohio St.3d 403, 420, 739 N.E.2d 300 (2000). The touchstone of due process analysis "is the fairness of the trial, not the culpability of the prosecutor." *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Where it is clear beyond a reasonable doubt that the defendant would have been found guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. *Id.*, citing *State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011-Ohio-5418, ¶ 21.

{¶ 33} We review allegations of prosecutorial misconduct in the context of the entire trial. *State v. Stevenso*n, 2d Dist. Greene No. 2007-CA-51, 2008-Ohio-2900, ¶ 42, citing *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The prosecution is "entitled to significant latitude in its closing remarks," and "may comment freely on 'what the evidence has shown and what reasonable inferences may be drawn therefrom.' " *State v. Carpenter*, 116 Ohio App.3d 615, 622, 688 N.E.2d 1090 (2d Dist.1996), citing *State v. Maurer*, 15 Ohio St.3d 239, 267, 473 N.E.2d 768 (1984), and quoting *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).

{¶ 34} Failure to object to prosecutorial misconduct at trial waives all but plain error. *State v. Coben*, 2d Dist. Greene No. 2001-CA-8, 2002 WL 313133, *1 (Mar. 1, 2002). This Court has stated:

We recognize plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " In order to prevail on a claim governed by the plain error standard, [the

defendant] must demonstrate that the outcome of [his or] her trial would clearly have been different but for the errors that [he or] she alleges. Thus, the alleged prosecutorial misconduct constitutes plain error only if it is clear that [the defendant] would not have been convicted in the absence of the improper comments.

(Citations omitted.) *Id.*, quoting *Carpenter* at 621. In cases where no objection was made to alleged misconduct occurring during the State's closing argument, "[t]he plain error standard generally presents, in accordance with its design, an almost insurmountable obstacle to reversal * * *." *Id.*, quoting *Carpenter* at 621.

{¶ 35} "For a prosecutor's closing argument to be prejudicial, the remarks must be 'so inflammatory as to render the jury's decision a product solely of passion and prejudice.' " *State v. Taylor*, 2d Dist. Montgomery No. 25146, 2013-Ohio-1587, quoting *State v. Arrone*, 2d Dist. Greene No. 2005-CA-89, 2006-Ohio-4144, ¶ 126. In the instant case, we find that the challenged statements made by the State in its closing and rebuttal closing arguments were improper, inflammatory, and mischaracterized the evidence presented trial. Initially, the State's comments regarding the failure of Phifer to subpoena any of his friends to testify on his behalf impermissibly suggested that the burden was on Phifer to prove his own innocence. It was Phifer's constitutional right that the State prove all the elements of every charged offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Moreover, Hagans, Phifer's girlfriend, testified on his behalf at trial. Thus, the State's comments in this regard were incorrect as well as impermissible.

{¶ 36} Furthermore, the prosecutor's statements in closing argument regarding

Phifer being "indirectly responsible" for someone overdosing in Clark County were entirely improper. There was no evidence adduced by the State that anyone overdosed on methamphetamine sold by Phifer. Additionally, by citing statistics and mentioning himself, his father, and his brother, the prosecutor sought only to inflame the jury with his rhetoric. The prosecutor's statements were clearly improper for closing argument.

{¶ 37} Lastly, the prosecutor's statements in his rebuttal closing argument regarding Clark County, Ohio, being the "epicenter for the opioid epidemic" were also clearly improper and not supported by the evidence presented at trial. Phifer was not charged with possession and/or trafficking of opioids. Phifer was charged with possession and trafficking of methamphetamine, which is not an opioid. Not only was the prosecutor's statement unsupported by the evidence, it was clearly aimed at inflaming the jury.

{¶ 38} Nevertheless, Phifer failed to object to any of the prosecutor's statements at trial. Therefore, as previously stated, the prosecutor's remarks cannot be grounds for error unless they served to deny Phifer a fair trial. On that basis, we find that the prosecutor's comments do not rise to the level of plain error. Ample evidence of Phifer's guilt was adduced by the State, and the statements in this case were not so inflammatory that the jury's findings were the product of passion and prejudice rather than proof of guilt. *State v. Jackson*, 107 Ohio St.3d 53, 836 N.E.2d 1173, 2005-Ohio-5981, ¶ 113. In addition, a prosecutor's argument must be viewed in its entirety to determine prejudice. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996). Finally, the trial court instructed the jurors that they must not be influenced by any consideration of sympathy or prejudice. *See Jackson* at ¶ 113. Nevertheless, we caution the State that under

different circumstances, where the evidence against a defendant were less indicative of guilt than in the instant case, comments by the prosecutor like those described above could very well warrant a reversal.

**{¶ 39}** Phifer's second assignment of error is overruled.

**{¶ 40}** Both of Phifer's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.

Copies sent to:

Andrew P. Pickering
William O. Cass, Jr.
Hon. Richard J. O'Neill