[Cite as *State v. Francis*, 2024-Ohio-5945.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-8 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 222 |
| | : | |
| AARON MICHAEL FRANCIS | : | (Criminal Appeal from Common Pleas |
| aka AARON MICHAEL FRANCES | : | Court) |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 20, 2024

. . . . . . . . . . .

JENNIFER E. MARIETTA, Attorney for Appellant

SAMANTHA B. WHETHERHOLT, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant Aaron Michael Francis, aka Aaron Michael Frances ("Francis"), appeals from his conviction in the Champaign County Court of Common Pleas after he pled guilty to one count of burglary and one count of theft from a person in a protected class. In support of his appeal, Francis claims that the State committed prosecutorial

misconduct at his sentencing hearing by making improper, speculative comments that led the trial court to impose the maximum possible prison terms for his offenses. Francis also claims that the trial court unlawfully ordered the forfeiture of certain property. In light of these alleged errors, Francis asks this court to vacate his sentence and to remand his case back to the trial court for resentencing. For the reasons outlined below, we disagree with Francis's claims and will affirm the judgment of the trial court.

## Facts and Course of Proceedings

{¶ 2} On December 4, 2023, a Champaign County grand jury returned an indictment charging Francis with two counts of burglary and two counts of theft from a person in a protected class. The two counts of burglary each included a prior conviction specification under R.C. 2929.13(F)(6). The indictment did not include any specifications for the forfeiture of property. The charges stemmed from allegations that, during the early morning hours of August 17, 2023, and November 19, 2023, Francis used force to trespass into his elderly landlord's residence and stole cash and other items from the residence while the landlord was asleep in his bedroom.

{¶ 3} Pursuant to a plea agreement, Francis pled guilty to one second-degree-felony count of burglary, with a prior conviction specification, and one fourth-degree-felony count of theft from a person in a protected class. In exchange for Francis's guilty pleas, the State agreed to dismiss the other two counts and to recommend the preparation of a presentence investigation report for sentencing. In addition, Francis agreed to pay court costs, court-appointed legal fees, and restitution to the victim. The parties further

agreed that the Urbana Police Department would return various items of clothing to Francis and that several fingerprints and DNA swabs collected as evidence would be forfeited to the Urbana Police Department.

{¶ 4} Following its acceptance of Francis's guilty plea, the trial court held a sentencing hearing on February 21, 2024. During the sentencing hearing, the trial court ordered forfeiture of the property as outlined in the plea agreement and imposed the maximum possible prison terms for each of Francis's offenses. Specifically, the trial court ordered Francis to serve a mandatory indefinite term of a minimum of 8 years to a maximum of 12 years in prison for burglary, and 18 months in prison for theft of a person in a protected class. The trial court did, however, order those prison terms to be served concurrently.

{¶ 5} Because Francis was on post-release control at the time of his offenses, pursuant to R.C. 2929.141(A)(1), the trial court also imposed a 12-month prison term as a penalty for Francis's violation of his post-release control. As required by statute, the trial court ordered the additional prison term to be served consecutively to his prison terms for burglary and theft from a person in a protected class. Accordingly, Francis's total prison sentence amounted to a minimum of 8 years to a maximum of 12 years plus 12 months for his post-release control violation.

{¶ 6} Francis now appeals, raising two assignments of error for review.

**First Assignment of Error**

{¶ 7} Under his first assignment of error, Francis contends that the State

committed prosecutorial misconduct during his sentencing hearing when it made certain speculative comments about how Francis could have become violent toward the victim if the victim had woken up during the offenses and recognized Francis as the intruder. Specifically, Francis takes issue with the following comments:

> The State – we're really very fortunate because the State's concern about what would have happened if the victim would have woken up and came out of his room and confronted the Defendant as he was committing the act. He would have been able to identify the Defendant presumably. The Defendant was not masked. He did have a scarf over his nose in one incident and a hoodie up over his head. But he was not masked. And he would have been able to identify him. What would this Defendant had done? And, certainly, what would the victim had done? Would the victim attempted to stop him causing a struggle to occur? Would the Defendant had attempted to take actions to prevent the victim from being able to call law enforcement? Would there have been an assault? We're thankful that didn't occur.

Sentencing Hearing Tr. (Feb. 21, 2024), p. 4-5.

{¶ 8} "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Garrett*, 2022-Ohio-4218, ¶ 144, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

**{¶ 9}** "If the improper remarks deprived defendant of a fair trial, then prejudice has resulted from the misconduct and reversal is warranted." *State v. Miller*, 2000 WL 1369918, *5 (2d Dist. Sept. 22, 2000), citing *State v. Maurer*, 15 Ohio St.3d 239 (1984). (Other citation omitted.) However, because prejudice is required, " '[n]ot every intemperate remark by counsel can be a basis for reversal.' " *State v. Miller*, 2023-Ohio-2508, ¶ 65 (2d Dist.), quoting *State v. Landrum*, 53 Ohio St.3d 107, 112 (1990), citing *Maurer* at 267. For example, with regard to sentencing, multiple courts have recognized that "[a]ny effect of an improper argument made by the State at sentencing can [be] cured by the trial court's independent assessment of the sentencing factors." *State v. Powers*, 2019-Ohio-3321, ¶ 4 (3d Dist.), citing *State v. Lundgren*, 73 Ohio St.3d 474, 489 (1995); *accord State v. Robinson*, 2022-Ohio-1311, ¶ 52 (8th Dist.).

**{¶ 10}** Francis concedes, however, that because he failed to object to the speculative comments at issue, his prosecutorial misconduct claim may only be reviewed for plain error. *See State v. Phifer*, 2021-Ohio-521, ¶ 34 (2d Dist.) ("[f]ailure to object to prosecutorial misconduct at trial waives all but plain error"). In order to prevail under a plain-error review, Francis must establish both that misconduct occurred and that, but for the misconduct, the outcome of the proceeding clearly would have been different. *State v. Mammone*, 2014-Ohio-1942, ¶ 111, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) and Crim.R. 52(B); *accord State v. Ward*, 2023-Ohio-328, ¶ 68 (2d Dist.).

**{¶ 11}** In this case, even if we were to conclude that the State's speculative comments were inappropriate, the record fails to establish that, but for those comments, the trial court would have sentenced Francis any differently. During Francis's sentencing

hearing, the trial court thoroughly discussed its sentencing considerations on the record and recited several factors that it believed made Francis's criminal conduct more serious. Those factors included that Francis burglarized the victim twice within a span of three months, that the victim was elderly, that Francis committed the offenses during a time he knew the victim would be home, that Francis's relationship with the victim facilitated the offenses, and that Francis was under the influence of methamphetamine at the time of the offenses.

{¶ 12} Also, when assessing Francis's likelihood of recidivism, the trial court considered that Francis had a prior conviction for burglary, that Francis had committed the instant burglary and theft offenses while on post-release control for robbery, and that Francis had previously committed two other sets of offenses while on post-release control. In addition, the presentence investigation report reflected that between 2005 and 2023, Francis acquired several felony and misdemeanor convictions for criminal damaging, receiving stolen property, burglary, possession of drugs, having weapons while under disability, robbery, and disorderly conduct.

{¶ 13} The trial court also considered that Francis was not entirely cooperative with law enforcement and that he did not act on impulse when he committed the instant offenses, but rather planned out the offenses presumably to fund his drug habit. The trial court further considered that Francis's addiction to drugs likely aggravated his mental health issues and that Francis had failed to address his mental health issues by taking advantage of his strong familial support system and the support he had through the Adult Parole Authority.

{¶ 14} Although the record establishes that the trial court considered the State's speculative comments about how Francis's offenses could have led to violence against the victim, immediately after that consideration, the trial court found that the offenses did not result in any violence and that the lack of violence was a sentencing factor that made Francis's criminal conduct less serious. Taking that into consideration and considering all the other sentencing factors referenced by the trial court, we find that Francis cannot establish that his sentence would have been any different had the State not made its speculative comments about the potential for violence. Indeed, the potential for violence against the victim was a small part of the trial court's sentencing determination and was, for the most part, negated by the trial court's finding that Francis had not engaged in any violence during the offenses.

{¶ 15} Given the plethora of factors making Francis's criminal conduct more serious, Francis's extensive criminal history, and the fact that Francis was on post-release control at the time he committed the offenses in question, Francis cannot demonstrate that he would have received a lesser sentence absent the State's speculative comment, and therefore he cannot establish plain error. Accordingly, Francis's prosecutorial misconduct claim fails on that basis.

{¶ 16} Francis's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 17} Under his second assignment of error, Francis contends that the trial court unlawfully ordered forfeiture of the fingerprints and DNA swabs to the Urbana Police

Department. Francis claims that the trial court's forfeiture order was unlawful because there was no forfeiture specification included within his indictment. We disagree.

{¶ 18} In support of his argument, Francis cites R.C. 2941.1417(A), which provides that: "[P]roperty is not subject to forfeiture in a criminal case unless the indictment, count in the indictment, or information charging the offense" includes a specification that describes "the nature and extent of the alleged offender's interest in the property, a description of the property, and, if the property is alleged to be an instrumentality, the alleged use or intended use of the property in the commission or facilitation of the offense." Francis also cites *State v. Poirier*, 2021-Ohio-1743, ¶ 29 (2d Dist.), wherein this court found that there was "no statutory authority" for forfeiture of property where statutory procedures were not followed.

{¶ 19} This court recently addressed the exact same argument raised by Francis in *State v. King*, 2024-Ohio-4705 (2d Dist.). In *King*, we found the argument lacked merit because the parties in that case had negotiated the forfeiture in question as part of the appellant's plea agreement. *Id*. at ¶ 13-14. Specifically, we stated:

> Upon review, we find King's argument to be unpersuasive. Unlike the present case, *Poirier* did not involve negotiated forfeiture under a plea agreement. No statutory authority was required here because forfeiture was a product of the parties' own agreement. *See, e.g., State v. Humphrey*, 2022-Ohio-2456, ¶ 2, 9 (12th Dist.) (upholding forfeiture of a black-powder pistol pursuant to a plea agreement although the indictment lacked a forfeiture specification); *Bedford v. Doerner*, 2013-Ohio-1798, ¶ 10

(8th Dist.) ("Although the charging instrument against Doerner did not contain a forfeiture specification as required by R.C. 2981.04(A), Doerner agreed to forfeit the property nonetheless pursuant to a plea agreement and effectively waived any rights in this regard."). As part of his negotiated guilty plea, King agreed to forfeit certain items to the Urbana Police Division. Therefore, statutory provisions governing forfeiture were not controlling. *State v. Davis*, 2008-Ohio-753, ¶ 47-48 (2d Dist.), quoting *State v. Gladden*, 86 Ohio App.3d 287, 289 (1st Dist. 1993); *State v. Sammor*, 2008-Ohio-4847, ¶ 7 (9th Dist.). The second assignment of error is overruled.

*Id.* at ¶ 42.

**{¶ 20}** Like *King*, the record in this case establishes that Francis and the State negotiated a plea agreement whereby the parties agreed that the fingerprints and DNA swabs would be forfeited to the Urbana Police Department. *See* Plea of Guilty Agreement and Entry, p. 5. Therefore, even if we were to assume that Francis had some interest in the fingerprints and DNA swabs, because Francis agreed to the forfeiture of those items as part of his negotiated plea agreement, the statutory provisions governing forfeiture did not apply. Accordingly, for the reasons discussed in *King*, Francis's argument challenging the forfeiture in this case lacks merit.

**{¶ 21}** Francis's second assignment of error is overruled.

### Conclusion

**{¶ 22}** Having overruled both assignments of error, the judgment of the trial court

is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.